Billie Joyce FELL, Individually and on behalf of all other persons similarly situated

v.

Claude ARMOUR, Commissioner, Tennessee Department of Safety, et al.

Civ. A. No. 6367.

United States District Court,
M. D. Tennessee,
Nashville Division.

Nov. 27, 1972.

Paul M. Geier, Rita S. Geier, Legal Services of Nashville, Inc., Walter C. Kurtz, Nashville, Tenn., for plaintiff.

Charles W. Cherry (resigned 10/17/72), Asst. Atty. Gen., Bart Durham, Asst. Atty. Gen., David M. Pack, State's Atty. Gen., State of Tennessee, Nashville, Tenn., for defendants.

Before MILLER, Circuit Judge, GRAY, Chief District Judge, and MORTON, District Judge.

MORTON, District Judge.

Plaintiff brings this suit as a class action challenging the constitutionality of various provisions of the Tennessee Drug Control Act of 1971, T.C.A. §§ 52–1408—52–1448, and by incorporation T.C.A. §§ 52–1404—52–1407. Plaintiff seeks injunctive relief authorized by 42 U.S.C. § 1983 and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

■■■■ Jurisdiction is conferred on this Court by 28 U.S.C. § 1343(3) and (4) which provide for original jurisdiction in United States district courts of suits authorized by 42 U.S.C. § 1983. This three-judge court was convened pursuant to 28 U.S.C. §§ 2281 and 2284.

Plaintiff is the registered owner of a 1969 Opel station wagon. On or about August 7, 1971, a sale of marihuana was made from plaintiff's Opel station wagon to an undercover officer of the Knoxville Police Department. Plaintiff asserts that she had loaned the vehicle to her boyfriend on August 7, 1971, and that she had no knowledge that a sale of marihuana would be made from her vehicle by a third person.

After the sale of marihuana from plaintiff's vehicle, the Knoxville Police Department placed plaintiff's Opel station wagon on a list of automobiles to be seized for violation of the Tennessee Drug Control Act of 1971 (hereinafter sometimes "the Act"). The applicable provisions of the Act are set out in the Appendix to this opinion. On September 23, 1971, while plaintiff was driving her Opel station wagon on a Knoxville street, a Knoxville policeman stopped plaintiff and seized her car. No formal notice was given to plaintiff as to the reason for the seizure, the procedure by which she might file a claim for the recovery of her automobile, the time period in which her claim must be filed, or the penalty for failure to file within the time period of the Act. Plaintiff learned of the procedure and time period for filing a claim for recovery and filed

a claim within the ten-day period of the Act. Plaintiff was allowed to proceed in forma pauperis at the hearing before the Commissioner of Safety and was not required to post the $250 cost bond, which under the statute is a condition precedent to the hearing. However, the Commissioner of Safety refused to issue subpoenas on behalf of plaintiff. At this hearing, authorized by T.C.A. § 52–1443(i) and §§ 52–1404—52–1407, the authorized representative of the Commissioner of Safety ordered the automobile returned to plaintiff.

Plaintiff filed this suit in federal court on November 8, 1971, the same date as, but prior to, the hearing authorized by the Act, and prior to the return of her vehicle.

This Court issued a temporary restraining order on July 27, 1972, temporarily restraining and enjoining defendants from selling vehicles which have been or will be seized and held pursuant to and by operation of T.C.A. §§ 52–1404, 52–1406, 52–1443(a)(4)(B), 52–1443(b), 52–1443(b)(4), 52–1443(i), and 52–1444(a), pending the decision of this Court on the merits.

Plaintiff asks this Court to:

(1) issue a permanent injunction enjoining defendants Claude Armour, Joe Fowler, Winfield Dunn, David Pack, their agents, and all others acting in concert with them from enforcing, operating and executing the Tennessee Drug Control Act of 1971, T.C.A. §§ 52–1443 (a)(4)(B), 52–1443(b), 52–1443(b)(4), 52–1443(i), and 52–1444(a), and T.C.A. §§ 52–1404 and 52–1406 incorporated therein, as against plaintiff and all other persons similarly situated;

(2) declare pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure that the Tennessee statutes cited herein are unconstitutional on their face and as applied to plaintiff and all others similarly situated in that they violate the Fourth and Fourteenth Amendments to the Constitution of the United States;

(3) award monetary damages to the plaintiff and all other persons similarly situated to compensate for the inconvenience and expense to them caused by the seizure of their conveyances pursuant to said statutes in an amount yet to be determined and punitive damages in the amount of Five Hundred Dollars ($500.-00) for plaintiff and each other person similarly situated;

(4) order the return of plaintiff's vehicle and vehicles of all other persons similarly situated; and

(5) grant to plaintiff and all other persons similarly situated such additional and further relief as is just, proper and equitable.

Plaintiff makes the following challenges to the Act:

(a) The statutory scheme violates the Fourth and Fourteenth Amendments by allowing for the warrantless seizure not incident to an arrest of a conveyance.

(b) The statutory scheme does not provide for notice and hearing prior to seizure of conveyances, and amounts to a deprivation of property without due process as forbidden by the Fourteenth Amendment.

(c) The statutory scheme does not meet Fourteenth Amendment minimal due process standards since it has no provision for notice to the owner of a seized vehicle that it has been seized, the reasons for seizure, the method to challenge such seizure, and the penalty for failure to file a claim within ten (10) days.

(d) The statutory scheme places the burden of proof on the claimant in the hearing before the Commissioner of Safety in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

(e) The cost bond requirement of the statutory scheme violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

Defendants, in their Trial Brief filed April 28, 1972, at 2, 3 and 4, argue that the Court should abstain from deciding the constitutional issues presented by the complaint. Defendants urge the Court to abstain in order to serve "two important countervailing interests: either the avoidance of a premature and perhaps unnecessary decision of a serious federal constitutional question, or the avoidance of the hazard of unsettling of some delicate balance in the area of federal-state relationships." Defendants' Trial Brief, at 4.

As to the interest of not unsettling any delicate federal-state relationship, the defendants submit "that the federal courts should abstain (a) if a State action is pending and (b) until the State courts have been given the opportunity to authoritatively construe the statute in question." Defendants' Trial Brief, at 4.

■ The Court holds that the doctrine of abstention should not be applied in this case.

" ' . . . Though never interpreted by a state court, if a state statute is not fairly subject to an interpretation which will avoid or modify the federal constitutional question, it is the duty of a federal court to decide the federal question when presented to it. Any other course would impose expense and long delay upon the litigants without hope of its bearing fruit.' " Zwickler v. Koota, 389 U.S. 241, 251, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967), *quoting from* United States v. Livingston, 179 F.Supp. 9, 12, 13 (E. D.S.C.1959), aff'd 364 U.S. 281, 80 S. Ct. 1611, 4 L.Ed.2d 1719 (1960).

"Where there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim." Wisconsin v. Constantineau, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971).

Defendants have informed the Court of no case pending before a state court which presents the same constitutional issues presented to this Court. Nor have defendants informed this Court of any case pending before a state court

the determination of which would obviate the necessity of deciding the serious constitutional issues presented to this Court.[1] *See,* Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). "[A]bstention cannot be ordered simply to give state courts the first opportunity to vindicate the federal claim." Zwickler v. Koota, *supra,* 389 U.S. at 251, 88 S.Ct. at 397. *See also* Wisconsin v. Constantineau, *supra,* 400 U.S. at 439, 91 S.Ct. 507.

 The Court finds that all the requirements of Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure have been met and that plaintiff is a proper representative of a class consisting of all those persons who have had or will have conveyances owned by them seized pursuant to the authority of the Tennessee Drug Control Act of 1971.

## SEIZURE OF CONVEYANCE WITHOUT A WARRANT AND NOT INCIDENT TO AN ARREST

The authorities cited by plaintiff for the proposition that a warrant should be obtained prior to the seizure of a conveyance for alleged use in violation of the Tennessee Drug Control Act of 1971 are persuasive. This is true particularly where no emergency situation or exigent circumstances exist. As to the seizure of plaintiff's automobile, it would appear that no emergency situation or exigent circumstances existed that would in a practical sense require that the probable cause issue not be presented to a judicial official. See discussion as to desirability of warrant in Interbartolo v. United States, 303 F.2d 34 (1st Cir. 1962).

 The Court finds it desirable that a warrant be obtained prior to seizure of a conveyance under authority of the Act in furtherance of the long-established policy favoring judicial approval before state authorities deprive citizens of property. However, the case law overwhelms these policy considerations and dispenses with any warrant requirement in the seizure of property for purposes of forfeiture. While evidence seized by unreasonable search and seizure in violation of the Fourth Amendment may not be introduced into evidence at a forfeiture proceeding, a seizure without a warrant but based upon probable cause to believe the property has been used in violation of the Act is not an unreasonable seizure under the Fourth Amendment. Dodge v. United States, 272 U.S. 530, 47 S.Ct. 191, 71 L.Ed. 392 (1926); United States v. Troiano, 365 F.2d 416 (3rd Cir. 1966), cert. denied 385 U.S. 958, 87 S.Ct. 396, 17 L.Ed.2d 303 (1966); Burge v. United States, 342 F.2d 408 (9th Cir. 1965), cert. denied 382 U.S. 829, 86 S.Ct. 63, 15 L.Ed.2d 72 (1965); United States v. $1,058.00 in United States Currency, 323 F.2d 211 (3rd Cir. 1963); Armada v. United States, 319 F.2d 793 (5th Cir. 1963), cert. denied 376 U.S. 906, 84 S.Ct. 659, 11 L.Ed.2d 605 (1964); Sirimarco v. United States, 315 F.2d 699 (10th Cir. 1963), cert. denied 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1032 (1963); Interbartolo v. United States, *supra;* United States v. Carey, 272 F.2d 492 (5th Cir. 1959); Weathersbee v. United States, 263 F.2d 324 (4th Cir. 1958); Grogan v. United States, 261 F.2d 86 (5th Cir. 1958), cert. denied 359 U.S. 944, 79 S.Ct. 725, 3 L.Ed.2d 677 (1959); United States v. One 1956 Ford Tudor Sedan, 253 F.2d 725 (4th Cir. 1958); Welsh v. United States, 95 U.S.App.D.C. 93, 220

---

1. Defendants do state in their brief that "[a]n important consideration is the fact that a case involving the Tennessee statute is now pending before the Tennessee Court of Appeals." Defendants' Trial Brief, at 4. However, defendants do not state what issues are raised in this case, nor do defendants anywhere in their answer or brief state the style of the case. The Court has not discovered any case in the Tennessee Court of Appeals or the Tennessee Supreme Court the outcome of which would obviate the necessity of this Court's deciding the constitutional issues presented in this case.

F.2d 200 (1955); Sanders v. United States, 201 F.2d 158 (5th Cir. 1953); Harman v. United States, 199 F.2d 34 (4th Cir. 1952); United States v. Pacific Finance Corporation, 110 F.2d 732 (2d Cir. 1940); United States v. Eight Boxes Containing Various Articles, 105 F.2d 896 (2d Cir. 1939); Two Certain Ford Coupe Automobiles v. United States, 53 F.2d 187 (5th Cir. 1931); Strong v. United States, 46 F.2d 257 (1st Cir. 1931), appeal dismissed 284 U. S. 691, 52 S.Ct. 27, 76 L.Ed. 583 (1931); Bourke v. United States, 44 F.2d 371 (6th Cir. 1930), cert. denied 282 U.S. 897, 51 S.Ct. 182, 75 L.Ed. 790 (1930); United States v. One 1963 Cadillac Coupe de Ville Two-Door, 250 F.Supp. 183 (W.D.Mo.1966); United States v. One Bally "Barrel-O-Fun", 224 F.Supp. 794 (M.D.Pa.1963), aff'd. Brozzetti v. Rogers, 337 F.2d 857 (3rd Cir. 1964); United States v. $4,171.00 in United States Currency, 200 F.Supp. 28 (N.D. Ill.1961); United States v. One 1953 Oldsmobile Sedan, 132 F.Supp. 14 (W. D.Ark.1955); United States v. One Ford Victoria, 114 F.Supp. 458 (N.D.Calif. 1953). *But see* Berkowitz v. United States, 340 F.2d 168 (1st Cir. 1965) *and* John Bacall Imports, Ltd. v. United States, 287 F.Supp. 916 (C.D.Calif. 1968), mod. 412 F.2d 586 (9th Cir. 1969).

## SEIZURE WITHOUT PRIOR NOTICE AND HEARING

Were it not for the historically peculiar nature of the law relevant to forfeitures, the Court would be strongly inclined to apply the holdings and rationale of recent United States Supreme Court due process cases as to notice and hearing prior to seizure. *See* Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Fuentes v. Shevin,

407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

■■ These cases stand for the general principle that due process requires that *prior* to deprivation of an interest or entitlement, even a temporary dispossession, notice and a meaningful opportunity to resist the deprivation is required. However, "[t]here are 'extraordinary situations' that justify postponing notice and opportunity for a hearing. Boddie v. Connecticut, supra, [401 U.S. 371], at 379, [91 S.Ct. 780] 28 L. Ed.2d [113] at 119. These situations, however, must be truly unusual." Fuentes v. Shevin, *supra*, 407 U.S. at 90, 92 S.Ct. at 1999, 32 L.Ed.2d at 575, 576. The legal history of forfeiture indicates that seizure of goods pursuant to forfeiture statutes is to be included among those extraordinary and truly unusual situations. The case law governing seizure of forfeited property places no obligation on governmental authorities to provide notice and opportunity to be heard prior to seizure. While the Court believes it to be undesirable that the citizen is not insulated from potentially arbitrary seizures by prior notice and a prior fair and meaningful hearing before an impartial judicial officer, the law is to the contrary. Owners of vehicles are not deprived of rights of due process under the Fourteenth Amendment by the absence in the Act of provisions for notice and hearing prior to seizure. The Act, as interpreted by the Court, provides for forfeiture upon use of property in violation of the Act.[2] Upon the illegal use the state is entitled to immediate possession of the property and property rights of the owner are immediately divested, though the seizure and physical deprivation may not occur until later. The courts have consistently recognized that statutes may provide for immediate forfeiture upon the illegal use of property. *See e. g.* United States v. Stowell, 133 U.S. 1, 10 S.Ct. 244, 33 L. Ed. 555 (1890); United States v. Mills,

---

2. As will be explained subsequently under the topic "Due Process After Seizure", forfeiture of property upon its illegal use is conditioned upon the provision of procedural due process requirements subsequent to seizure of the property.

440 F.2d 647 (6th Cir. 1971), cert. denied 404 U.S. 837, 92 S.Ct. 127, 30 L. Ed.2d 70 (1971); United States v. One 1967 Chris-Craft 27 Foot Fiber Glass Boat, 423 F.2d 1293 (5th Cir. 1970); Florida Dealers and Growers Bank v. United States, 279 F.2d 673 (5th Cir. 1960); Weathersbee v. United States, *supra*; Grogan v. United States, *supra*; Harman v. United States, *supra*; United States v. Pacific Finance Corporation, *supra*; United States v. $4,171.00 in United States Currency, *supra*; United States v. One 1954 Model Ford Victoria Automobile, 135 F.Supp. 809 (E.D.N.C. 1955); United States v. One 1953 Oldsmobile Sedan, *supra*; United States v. One 1952 Ford Victoria, *supra*; De Bonis, v. United States, 103 F.Supp. 123 (W.D.Pa.1952).

■ While the above cases dealt primarily with rights to remission and challenges to seizures under the Fourth Amendment, the same rationale is equally applicable to alleged deprivation of property without due process under the Fourteenth Amendment.

## DUE PROCESS AFTER SEIZURE

■ After seizure of the property, the forfeiture procedure must accord with due process. *See* Menkarell v. Bureau of Narcotics, 463 F.2d 88 (3rd Cir., 1972); United States v. Edwards, 368 F.2d 722, 724 (4th Cir. 1966); Jaekel v. United States, 304 F.Supp. 993 (S.D.N. Y.1969); United States v. One 1963 Cadillac Coupe de Ville Two-Door, *supra,* 250 F.Supp. at 186; People of State of Michigan v. Campbell, 39 Mich.App. 433, 198 N.W.2d 7 (1972).

■ At first impression it might appear that divestiture of property rights immediately upon use in violation of a forfeiture act is inconsistent with any procedural due process requirements of notice and hearing subsequent to forfeiture and seizure. However, immediate divestiture and procedural due process requirements subsequent to seizure can be reconciled by application of the doctrine of relation back. Upon the government's proving use of property in violation of a forfeiture statute, the divestiture of property rights relates back to the point in time when the property was unlawfully used. United States v. Stowell, *supra*; Florida Dealers and Growers Bank v. United States, *supra*.

The Tennessee Drug Control Act of 1971 appears to have been drawn so as to minimize the opportunities for notice and opportunities to be heard. The only provision for notice, if it indeed can be classified as notice, is contained in T.C. A. § 52–1404, which reads as follows:

"52–1404. *Procedure in confiscation of drug and vehicle.*—In all cases of seizure of any narcotic drugs or marihuana or any vehicle, aircraft or boat or other property subject to forfeiture under the provisions of this chapter, the officer or other person making the seizure shall proceed as follows:

"First: He shall deliver to the person, if any, found in possession of such property, a receipt, showing a general description of the seized goods. A copy of said receipt shall be filed in the office of the department of safety and shall be open to the public for inspection."

This provision does not provide for the disclosure of the fact of seizure to an owner not in possession at the time of seizure, nor does this provision provide for the disclosure of the procedure for challenging the seizure to any owners of seized vehicles.

"The State concedes that this allegation of inadequacy of notice presents a serious question since the Tennessee statutes do not provide for post-seizure notice to a [sic] owner of a seized vehicle. The owner is not told the state agency to contact to obtain his vehicle nor is the owner apprised of the hearing procedures of T.C.A. 52–1404 in seeking to recover his vehicle. Nevertheless, the State in its answer has averred that the sei-

zure itself is notice to the owner or to the person in possession of the vehicle." Defendants' Trial Brief, at 13.

■ The provisions as to notice are clearly inadequate and do not comport with due process requirements of the Fourteenth Amendment.

"Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must be notified." Fuentes v. Shevin, *supra*, 407 U.S. at 80, 92 S. Ct. at 1994, 32 L.Ed.2d at 569.

"The right to a hearing is meaningless without notice." Walker v. Hutchinson, 352 U.S. 112, 115, 77 S.Ct. 200, 202, 1 L.Ed.2d 178 (1956).

"Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed. Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act." Lambert v. California, 355 U.S. 225, 228, 78 S.Ct. 240, 243, 2 L.Ed.2d 228 (1957), mod. and rehearing denied, 355 U.S. 937, 78 S.Ct. 410, 2 L.Ed.2d 419 (1958).

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); Schroeder v. New York, 371 U.S. 208, 211, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); Armstrong v. Manzo, 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed. 2d 62 (1965); Sniadach v. Family Finance Corp., *supra*, 395 U.S. at 339, 89 S.Ct. 1820; Jaekel v. United States, *supra*, 304 F.Supp. at 999.

"As was emphasized in Mullane, the requirement that parties be notified of proceedings affecting their legally protected interests is obviously a vital corollary to one of the most funda-

mental requisites of due process—the right to be heard. 'This right . . . has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.' 339 U.S. at 314 [70 S.Ct. 652, 94 L.Ed. 865]." Schroeder v. New York, *supra*, 371 U.S. at 212, 83 S.Ct. at 282.

As to the form of notice to which the owner of a seized vehicle is entitled, it would appear that notice by publication would generally be constitutionally inadequate.

"The general rule that emerges from the Mullane Case is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." Schroeder v. New York, *supra*, at 212, 213, 83 S. Ct. at 282.

"Indeed in every case of the seizure of a registered motor vehicle the name and address of the registered owner is readily available from the motor vehicle registration authorities. In these circumstances no reasons of necessity compel the resort to notice by publication in lieu of notice more likely to be effective." Menkarell v. Bureau of Narcotics, *supra*, 463 F.2d at 95.

■ Therefore, due process would appear to require in most instances that owners of vehicles seized pursuant to the Act be afforded timely and adequate personal notice.

"Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." Mullane v. Central Hanover Bank and Trust Co., *supra*, 339 U.S. at 318, 70 S.Ct. at 659; Schroeder v. New York, *supra*, 371 U.S. at 213, 83 S.Ct. 279.

As to the contents of the notice, due process demands that more than a mere

"receipt, showing a general description of the seized goods" be provided the owner of a seized vehicle. The contents of the notice must be such as to insure that the owner of the seized vehicle be afforded the constitutionally required meaningful opportunity to be heard. As the notice must afford the owner seeking recovery of his vehicle an opportunity to present his objections to the forfeiture, the notice must necessarily state the reasons for the seizure and the procedure by which he may seek recovery of his vehicle, including the time period in which he must present his claim for recovery, and the penalty for failure to file within the time period.

The procedure by which an owner of a seized vehicle may seek its recovery should to the extent practicable be designed to maximize notice and opportunity to be heard. The State has an obligation to make a good faith effort to give the constitutionally required notice personally to the owner of a seized vehicle. Schroeder v. New York, *supra*, at 213, 214, 83 S.Ct. 279.

## DUE PROCESS AT HEARING—BURDEN OF PROOF

Plaintiff further contends that the statutory scheme places the burden of proof on the claimant in the hearing before the Commissioner of Safety in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

As to the procedural requisites required by due process for a hearing of this nature, the Supreme Court has stated:

"What the Constitution does require is 'an *opportunity* . . . granted at a meaningful time and in a meaningful manner,' Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62, 66 (1965) (emphasis added), 'for [a] hearing appropriate to the nature of the case,' Mullane v. Central Hanover Tr. Co., supra [339 U.S.], at 313 [70 S.Ct. at 657], 94 L. Ed. at 873. The formality and proce-

dural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971).

"[A] forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law." One 1958 Plymouth Sedan v. Com. of Pennsylvania, 380 U.S. 693, 700, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965). *See also*, United States v. One 1961 Red Chevrolet Impala Sedan, 457 F.2d 1353 (5th Cir. 1972); Compton v. United States, 377 F.2d 408 (8th Cir. 1967); *and* Suhomlin v. United States, 345 F.Supp. 650 (D.Md.1972).

The great importance of one's interest in an automobile under present-day conditions is apparent. An automobile, just as a driver's license, may be essential to the pursuit of a livelihood. *cf.* Bell v. Burson, *supra,* 402 U.S. at 539, 91 S.Ct. 1586, 29 L.Ed.2d 90.

The primary question presented is whether the State must initially bear the burden of proving that the seized vehicle was used in violation of the Act at the quasi-criminal proceeding before the Commissioner of Safety.

The Act provides the following as to burden of proof in the proceeding to recover the seized vehicle.

"52–1404. *Procedure in confiscation of drug and vehicle.*

\* \* \* \* \* \*

"Whenever in any proceeding under this chapter, a claim is filed for any vehicle, aircraft or boat seized, as hereinabove provided, the commissioner shall not allow the claim unless and until the claimant proves: (1) that he has an interest in such vehicle, aircraft or boat, as owner or otherwise, which he acquired in good faith; (2) that he had at no time any knowledge or reason to believe that it was being or would be

used in the violation of laws of the United States or of the state of Tennessee relating to narcotic drugs or marihuana; and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any state relating to narcotic drugs or marihuana has a right with respect to such vehicle, aircraft or boat, that before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his office or agent, was informed, in answer to his inquiry at the headquarters of the sheriff, chief of police, principal federal narcotics officer engaged in the enforcement of the narcotics laws, or other principal local or federal law enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

"52–1444. *Evidence, burden of proof—Immunity from liability, law enforcement officers in performance of duties.—*(a) It is not necessary for the state to negate any exemption or exception in §§ 52–1408—52–1448 in any complaint, information, indictment or other pleading or in any trial, hearing, or other proceeding under §§ 52–1408—52–1448. The burden of proof of any exemption or exception is upon the person claiming it.

"(b) In the absence of proof that a person is the duly authorized holder of an appropriate registration or order form issued under §§ 52–1408—52–1448, he is presumed not to be the holder of the registration or form.

The burden of proof is upon him to rebut the presumption.

"(c) No liability is imposed by §§ 52–1408—52–1448 upon any authorized state, county or municipal officer, engaged in the lawful performance of his duties."

■ The Act places no burden of proof whatever upon the State, but places the burden of proof upon the owner seeking recovery of his vehicle as to any exception or exemption provided by the Act. The State concedes that at the hearing before the Commissioner of Safety it has the burden of proving by a preponderance of evidence that the vehicle was used in violation of the Act. However, the statute itself must supply due process requirements. While the Court may interpret statutory language so as to conform to due process, it may not insert language into a statute so as to render it constitutional. Yu Cong Eng v. Trinidad, 271 U.S. 500, 46 S.Ct. 619, 70 L.Ed. 1059 (1926); Howard v. Illinois C. R. Co., 207 U.S. 463, 28 S.Ct. 141, 52 L.Ed. 297 (1908); United States v. Steffens, 100 U.S. 82, 25 L.Ed. 550 (1879).

"It is of course within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion, 'unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S. Ct. 330, 78 L.Ed. 674, 677, 90 A.L.R. 575. '[O]f course the legislature may go a good way in raising . . . [presumptions] or in changing the burden of proof, but there are limits . . . .'" Speiser v. Randall, 357 U.S. 513, 523, 78 S.Ct. 1332, 1340, 2 L.Ed.2d 1460 (1958).

"To experienced lawyers it is commonplace that the outcome of a lawsuit—and hence the vindication of legal rights—depends more often on

how the factfinder appraises the facts than on a disputed construction of a statute or interpretation of a line of precedents. Thus the procedures by which the facts of the case are determined assume an importance fully as great as the validity of the substantive rule of law to be applied. And the more important the rights at stake the more important must be the procedural safeguards surrounding those rights." *Id.*, at 520, 521, 78 S.Ct. at 1339.

The Supreme Court has held that one who is to suffer a penalty for a crime is entitled to greater procedural safeguards than one who is merely a party to a civil suit. Discussing purely civil actions for the collection of taxes vis-a-vis proceedings to impose a penalty for a crime, the Supreme Court stated:

"It is, of course, familiar practice in the administration of a tax program for the taxpayer to carry the burden of introducing evidence to rebut the determination of the collector. Phillips v. Dime Trust & S. D. Co., 284 U.S. 160, 167, 52 S.Ct. 46, 76 L.Ed. 220, 224; Brown v. Helvering, 291 U. S. 193, 199, 54 S.Ct. 356, 78 L.Ed. 725, 730. But while the fairness of placing the burden of proof on the taxpayer in most circumstances is recognized, this Court has not hesitated to declare a summary tax-collection procedure a violation of due process when the purported tax was shown to be in reality a penalty for a crime. Lipke v. Lederer, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061; cf. Helwig v. United States, 188 U.S. 605, 23 S.Ct. 427, 47 L.Ed. 614. The underlying rationale of these cases is that where a person is to suffer a penalty for a crime he is entitled to greater procedural safeguards than when only the amount of his tax liability is in issue." *Id.*, at 524, 525, 78 S.Ct. at 1341.

This reasoning is applicable to proceedings under the Act in question, the forfeiture of a vehicle being a penalty for a crime.

■■■ Therefore, the Court holds that before the State may deny the owner a claim for recovery of his vehicle seized pursuant to the authority of the Act, the State must prove by a preponderance of the evidence that the vehicle was used in violation of the Act. While the State concedes that it has this burden of proof by a preponderance of the evidence, the Act is not reasonably capable of such an interpretation.

Plaintiff contends that the State has the burden of proving beyond a reasonable doubt that the vehicle was used in violation of the Act, citing One 1958 Plymouth Sedan v. Com. of Pennsylvania, *supra.* The Court does not read One 1958 Plymouth Sedan v. Com. of Pennsylvania, *supra,* or any other authority as imposing such a burden upon the government in forfeiture proceedings. *See* Compton v. United States, *supra,* 377 F.2d at 411; One 1961 Lincoln Continental Sedan v. United States, 360 F.2d 467 (8th Cir. 1966).

■■■ However, the Court finds no constitutional objections to placing the burden upon the owner to prove that he is entitled to recovery of the vehicle by virtue of any exemption or exception provided by the Act, § 52–1444. Under the current state of the law, no constitutional objections exist to the forfeiture of a vehicle once it has been used in violation of a forfeiture statute, regardless of lack of knowledge or innocence of the owner. *See, e. g.,* Goldsmith, Jr.-Grant Co. v. United States, 254 U.S. 505, 41 S. Ct. 189, 65 L.Ed. 376 (1921); McKeehan v. United States, 438 F.2d 739, 742 (6th Cir. 1971); United States v. One 1967 Cadillac Coupe Eldorado, 415 F.2d 647 (9th Cir. 1969); United States v. One 1961 Cadillac, 337 F.2d 730 (6th Cir. 1964); United States v. Bride, 308 F.2d 470 (9th Cir. 1962); United States v. One 1958 Pontiac Coupe, 298 F.2d 421 (7th Cir. 1962); United States v. One 1957 Oldsmobile Automobile, 256 F.2d 931 (5th Cir. 1958); United States v. One 1962 Ford Thunderbird, 232 F. Supp. 1019 (N.D.Ill.1964); United

States v. One 1962 Ford Sedan, 228 F. Supp. 409 (M.D.Fla.1964); United States v. One 1955 Ford Convertible, 137 F.Supp. 830 (E.D.Pa.1956); United States v. One Oldsmobile Sedan, 118 F. Supp. 450 (E.D.La.1954). *See also* Van Oster v. Kansas, 272 U.S. 465, 47 S.Ct. 133, 71 L.Ed. 354 (1926); United States v. Pacific Finance Corporation, *supra,* 110 F.2d at 733; United States v. One 1948 Cadillac Convertible Coupe, 115 F. Supp. 723 (D.N.J.1953). *But see* United States v. One 1971 Ford Truck, 346 F. Supp. 613 (C.D.Calif.1972); Suhomlin v. United States, *supra;* and dictum in United States v. United States Coin and Currency, *supra,* 401 U.S. at 720, 721, 91 S.Ct. 1041, 28 L.Ed.2d 434.

■ Thus, under the weight of authority, any exception or exemption allowing recovery is a matter of grace on the part of the State and not constitutionally required by the Due Process Clause of the Fourteenth Amendment.

■ But assuming that the forfeiture of conveyances of innocent owners amounts to a deprivation of property without constitutional due process, the Act provides exemptions and exceptions whereby such innocent owners may recover their conveyances. The Court does not feel that the Act, by placing the burden of proof upon the claimant-owner as to an exemption or exception based upon lack of knowledge or innocence, offends "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," Speiser v. Randall, *supra,* 357 U.S. at 523, 78 S.Ct. at 1341. See also further discussion as to shifting of burden of going forward with the evidence in Speiser v. Randall, *supra,* at 524, 78 S. Ct. 1332, 2 L.Ed.2d 1460.

## DUE PROCESS AND EQUAL PROTECTION—COST BOND

Plaintiff further contends that the cost bond requirement of the Act violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. T.C.A. § 52–1404 requires the owner of seized property to post a cost bond of $250 in order to file a claim for the recovery of his vehicle and thereby obtain a hearing before the Commissioner of Safety. Plaintiff contends that this monetary requirement unconstitutionally and effectively precludes indigents from having access to the hearing procedure. Plaintiff cites Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); and Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) for her contention that the $250 cost bond "operates to foreclose a particular party's opportunity to be heard" in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

T.C.A. § 52–1404 provides that anyone who wishes to present a claim for recovery of a seized vehicle must do so within ten (10) days of seizure by filing a written claim with the Commissioner of Safety in Nashville, and by posting the $250 bond in question. The relevant portion of § 52–1404 of the Act reads:

"Third: Any person claiming any property so seized as contraband goods, may within ten (10) days from the date of seizure, at any time before the sale or disposition as herein provided, file with the commissioner at Nashville a claim in writing, requesting a hearing and stating his interest in the articles seized. Any such claimant shall also file with his claim a cost bond with one (1) or more good and solvent sureties in the sum of two hundred and fifty dollars ($250), said bond being made payable to the state of Tennessee."

The Act contains no provision authorizing the procedure to be in forma pauperis for those indigents unable to bear the cost of the $250 cost bond. Thus, the State allowed plaintiff to proceed in forma pauperis as a matter of grace and not as a matter of statutory right.

The Court feels that this issue is controlled by Boddie v. Connecticut, *supra,* wherein the Supreme Court stated:

"Just as a generally valid notice procedure may fail to satisfy due process because of the circumstances of the defendant, so too a cost requirement, valid on its face, may offend due process because it operates to foreclose a particular party's opportunity to be heard. The State's obligations under the Fourteenth Amendment are not simply generalized ones; rather, the State owes to each individual that process which, in light of the values of a free society, can be characterized as due." Boddie v. Connecticut, *supra,* 401 U.S. at 380, 91 S.Ct. at 787.

In *Boddie* the Supreme Court ruled that a state denies due process of law to indigent persons by refusing to permit them to bring divorce actions unless they first paid court costs of approximately $60 and service of process costs ranging from $15 to $50. The situation of the indigent plaintiffs in *Boddie* is very similar to the situation of indigent owners of seized vehicles under the Act. In *Boddie* the court found the plight of plaintiff to be

" . . . akin to that of defendants faced with exclusion from the only forum effectively empowered to settle their disputes. Resort to the judicial process by these plaintiffs is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court. For both groups this process is not only paramount dispute-settlement technique, but, in fact, the only available one. In this posture we think that this appeal is properly to be resolved in light of the principles enunciated in our due process decisions that delimit rights of defendants compelled to litigate their differences in the judicial forum." *Id.* at 376, 377, 91 S.Ct. at 785.

The $250 cost bond of the Act allows one sufficiently · affluent to obtain a hearing whereby he may seek recovery of his vehicle and avoid the harsh penalty of forfeiture. Those owners of seized vehicles who cannot afford the cost bond have their rights to seek recovery of the vehicle and thereby avoid the harsh penalty of forfeiture extinguished by their personal poverty. As to these indigent owners, the effect of the $250 cost bond requirement is to grant to the seizing police officer the effective right to extinguish all property interests. As to those too poor to afford a hearing, this exercise of raw power can only lead to arbitrary state action in that no neutral hearing officer or judicial official will have the opportunity to review the evidence and determine the propriety of the forfeiture or the claim for recovery. Thus, the indigent owner may be deprived of property without due process of law in that the deprivation may occur without any process whatsoever. As to the indigent owner the Act does not provide the requisite " 'protection of the individual against arbitrary action' which Mr. Justice Cardozo characterized as the very essence of due process." Slochower v. Board of Education of New York, 350 U.S. 551, 559, 76 S.Ct. 637, 641, 100 L. Ed. 692 (1956), *quoting from* Ohio Bell Tel. Co. v. Public Utilities Com., 301 U. S. 292, 302, 57 S.Ct. 724, 81 L.Ed. 1093 (1937).

"For when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented. It has long been recognized that 'fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights . . . .' " Fuentes v. Shevin, *supra,* 407 U.S. at 81, 92 S.Ct. at 1994, 32 L.Ed.2d at 570.

"[T]he right to a meaningful opportunity to be heard within the limits of practicality, must be protected against denial by particular laws that operate to jeopardize it for particular individ-

**1334**

uals." Boddie v. Connecticut, *supra*, 401 U.S. at 379, 380, 91 S.Ct. at 787.

The State has presented no countervailing interests or justifications sufficient to override the interests of indigent owners in having access to the sole process by which the owners may present their claims for recovery of the vehicle. The Court finds no State interests sufficient to override access to this procedure. An argument that the cost bond may deter frivolous claims or an argument of cost recoupment would have been insufficient. *See* Boddie v. Connecticut, *supra*, 401 U.S. at 381, 382, 91 S.Ct. 780.

■ Therefore, the Court holds that the $250 cost bond denies due process of law under the Fourteenth Amendment to indigent owners who are financially unable to post the cost bond and thus statutorily prohibited from asserting a claim for recovery of the seized vehicle.

Plaintiff further asserts that due to her inability to post the $250 cost bond she was denied the right to subpoena witnesses in her behalf at the hearing before the representative of the Commissioner of Safety. While plaintiff was allowed by the Commissioner of Safety to file her claim in forma pauperis without posting the $250 cost bond, she was denied the right to have issued any subpoenas. If no subpoenas were issued, then an owner of a seized vehicle may be unable to present his case and obtain a full and complete hearing. Further, an owner who is denied the requested subpoenas has no adequate remedy in the appeal process authorized by T.C.A. § 52–1405 since the review conducted by the Circuit Court of Davidson County is only on the pleadings and transcripts of the hearing before the Commissioner of Safety, no other evidence being allowed. Plaintiff argues that this alleged policy and procedure denies to those claimant-owners unable to post the $250 cost bond the due process and equal protection of the law guaranteed by the Fourteenth Amendment.

■ Plaintiff's contentions would be persuasive if the Act itself forbade the subpoenaing of witnesses for those indigent owners unable to post the $250 cost bond. However, the Act, § 52–1404, expressly provides that

". . . [a]ll parties to the proceeding, including the person claiming such property, shall have the right to have subpoena issued by the commissioner to compel the attendance of all witnesses deemed by such parties to be necessary for a full and complete hearing."

Thus all parties to the proceeding, necessarily including indigent owners unable to post the cost bond but granted a hearing, have the statutory right to have those witnesses necessary for a full and complete hearing subpoenaed for the hearing. If plaintiff was denied subpoena power, it would appear to be a misapplication of the statute.

■ The Court will not declare as unconstitutional a statute constitutional by its terms yet unconstitutionally misapplied. Maladministration of a law does not make the law unconstitutional. Cummings v. Merchants' Nat. Bank of Toledo, 101 U.S. 153, 161, 25 L.Ed. 903 (1880); Kortz v. Ellingson, 181 F.Supp. 857 (D.Colo.1960).

■ Therefore, the Court hereby holds that the Act does not deny to indigent owners subpoena power and does not deny to indigent owners any rights to due process and equal protection under the Fourteenth Amendment.

In summary, the Court holds as follows:

(1) The Tennessee Drug Control Act of 1971 does not violate the Fourth and Fourteenth Amendments of the United States Constitution by providing for the warrantless seizure of a conveyance not incident to an arrest.

(2) The Act does not deprive owners of their property without due process under the Fourteenth Amendment by not providing for notice and hearing prior to seizure of conveyances.

(3) The Act fails to provide to owners of seized conveyances notice subsequent to seizure sufficient to comport with the requirements of the Due Process Clause of the Fourteenth Amendment.

(4) The Act by placing no burden upon the State to prove that the seized conveyance was used in violation of the Act deprives owners of seized conveyances their rights to due process under the Fourteenth Amendment.

(5) The Act by imposing a $250 cost bond as a condition precedent to the hearing before the Commissioner of Safety violates the rights of indigent owners to due process under the Fourteenth Amendment.

The Act thus contains no constitutionally sufficient procedure whereby notice and meaningful opportunity to be heard are afforded owners of seized conveyances. The seized conveyances are not contraband per se and their return to the owners would not frustrate any public policy against the possession of such objects. *See* One 1958 Plymouth Sedan v. Pennsylvania, *supra,* 380 U.S. at 698–700, 85 S.Ct. 1246, 14 L.Ed.2d 170.

 The parties shall, within ten (10) days from the entry of this opinion, submit an order to provide that conveyances still in the possession of defendants be returned to the owners. The order shall further provide that no conveyances seized hereafter may be forfeited under the authority of the Tennessee Drug Control Act of 1971.

Plaintiff introduced no evidence to indicate that defendants were not acting in good faith under a statute they reasonably believed to be valid. Therefore, defendants are not liable for any monetary damages under 42 U.S.C. § 1983. *See* Pierson v. Ray, 386 U.S. 547, 87 S. Ct. 1213, 18 L.Ed.2d 288 (1967).

No attorneys' fees are charged to defendants.

APPENDIX

## THE TENNESSEE DRUG CONTROL ACT OF 1971

T.C.A. §§ 52–1408—52–1448
[in pertinent part]

52–1443. *Goods subject to forfeiture —Seizure—Disposition.*—(a) The following are subject to forfeiture:

(1) all controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of §§ 52–1408—52–1448;

(2) all raw materials, products and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of §§ 52–1408—52–1448;

(3) all property which is used, or intended for use, as a container for property described in paragraphs (1) or (2);

(4) all conveyances, including aircraft, vehicles, or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, for the purpose of sale or receipt of property described in paragraph (1) or (2), but:

(A) no conveyance used by any person as a common carrier in the transaction of business as a common carrier is subject to forfeiture under this section unless it appears that the owner or other person in charge of the conveyance is a consenting party or privy to a violation of §§ 52–1408—52–1448;

(B) no conveyance is subject to forfeiture under this section by reason of any act or omission established by the owner thereof to have been committed or omitted without his knowledge or consent;

(C) a conveyance is not subject to forfeiture for a violation of § 52–1432(b); and

(D) a forfeiture of a conveyance encumbered by a bona fide security

interest is subject to the interest of the secured party if he neither had knowledge of nor consented to the act or omission.

(5) all books, records, and research products and materials, including formulas, microfilm, tapes, and data which are used, or intended for use, in violation of §§ 52–1408—52–1448.

(b) Property subject to forfeiture under §§ 52–1408—52–1448 may be seized by the commissioner of safety or his authorized representative, agent, or employee, or a sheriff, deputy sheriff, municipal law enforcement officer, or constable upon process issued by any circuit or criminal court having jurisdiction over the property. Seizure without process may be made if:

(1) the seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;

(2) the property subject to seizure has been the subject of a prior judgment in favor of the state in a criminal injunction or forfeiture proceeding based upon §§ 52–1408—52–1448;

(3) the commissioner of safety or his authorized representative, agent, or employee, or a sheriff, deputy sheriff, municipal law enforcement officer, or constable has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or

(4) the commissioner of safety or his authorized representative, agent, or employee, or a sheriff, deputy sheriff, municipal law enforcement officer, or constable has probable cause to believe that the property was used or is intended to be used in violation of §§ 52–1408—52–1448.

(c) In the event of seizure pursuant to subsection (b), proceedings under subsection (d) shall be instituted promptly.

(d) Property taken or detained under this section shall not be subject to replevin, but is deemed to be in the custody of the commissioner of safety or his authorized representative, agent, employee, or a sheriff, deputy sheriff, municipal law enforcement officer, or constable subject only to the orders and decrees of the circuit or criminal court. When property is seized under §§ 52–1408—52–1448, the seizing authority may:

(1) place the property under seal;

(2) remove the property to a place designated by him; or

(3) require the commissioner of safety or his authorized representative, agent, or employee, or a sheriff, deputy sheriff, municipal law enforcement officer, or constable to take custody of the property and remove it to an appropriate location for disposition in accordance with law.

(e) When property is forfeited under §§ 52–1408—52–1448, the commissioner of safety or his authorized representative, agent, or employee, or a sheriff, deputy sheriff, municipal law enforcement officer, or constable shall remove it for disposition in accordance with law.

(f) Controlled substances listed in schedule I that are possessed, transferred, sold, or offered for sale in violation of §§ 52–1408—52–1448 are contraband and shall be seized and summarily forfeited to the state. Controlled substances listed in schedule I, which are seized or come into the possession of the state, the owners of which are unknown, are contraband and shall be summarily forfeited to the state.

(g) Species of plants from which controlled substances in schedules I, II, and VI may be derived which have been planted or cultivated in violation of §§ 52–1408—52–1448, or of which the owners or cultivators are unknown, or which are wild growths, may be seized and summarily forfeited to the state.

(h) The failure, upon demand by the commissioner of safety, his authorized representative, agent, or employee, or a sheriff, deputy sheriff, municipal law enforcement officer, or constable of the person in occupancy or in control of land or premises upon which the species of

plants are growing or being stored, to produce an appropriate registration, or proof that he is the holder thereof, constitutes authority for the seizure and forfeiture of the plants.

(i) Confiscation proceedings under §§ 52–1408—52–1448 shall be conducted in accordance with the provisions set forth in §§ 52–1404 through 1407.

52–1444. *Evidence, burden of proof— Immunity from liability, law enforcement officers in performance of duties.* —(a) It is not necessary for the state to negate any exemption or exception in §§ 52–1408—52–1448 in any complaint, information, indictment or other pleading or in any trial, hearing, or other proceeding under §§ 52–1408—52–1448. The burden of proof of any exemption or exception is upon the person claiming it.

(b) In the absence of proof that a person is the duly authorized holder of an appropriate registration or order form issued under §§ 52–1408—52–1448, he is presumed not to be the holder of the registration or form. The burden of proof is upon him to rebut the presumption.

(c) No liability is imposed by §§ 52–1408—52–1448 upon any authorized state, county or municipal officer, engaged in the lawful performance of his duties.

52–1445. *Administrative decisions— Judicial review.*—All final determinations, findings and conclusions of the department of safety, department of mental health, department of public health, or board of pharmacy under §§ 52–1408—52–1448 are final and conclusive decisions of the matters involved. Any person aggrieved by the decision may obtain review of the decision in the circuit courts of Davidson county upon petition for writ of certiorari. Findings of fact by the department of safety, department of mental health, department of public health or the board of pharmacy, if supported by substantial evidence, are conclusive.

52–1404. *Procedure in confiscation of drug and vehicle.*—In all cases of seizure of any narcotic drugs or marihuana or any vehicle, aircraft or boat or other property subject to forfeiture under the provisions of this chapter, the officer or other person making the seizure shall proceed as follows:

First: He shall deliver to the person, if any, found in possession of such property, a receipt, showing a general description of the seized goods. A copy of said receipt shall be filed in the office of the department of safety and shall be open to the public for inspection.

Second: All such property seized and confiscated under the provisions of this chapter shall be sold at public sale by the commissioner of standards and purchases when the same has been turned over to him by the commissioner of safety as now authorized by law.

Third: Any person claiming any property so seized as contraband goods, may within ten (10) days from the date of seizure, at any time before the sale or disposition as herein provided, file with the commissioner at Nashville a claim in writing, requesting a hearing and stating his interest in the articles seized. Any such claimant shall also file with his claim a cost bond with one (1) or more good and solvent sureties in the sum of two hundred and fifty dollars ($250), said bond being made payable to the state of Tennessee.

The commissioner shall set a date for hearing within ten (10) days from the day the claim is filed. The commissioner of safety is empowered to subpoena witnesses and compel their attendance at hearings authorized hereunder. All parties to the proceeding, including the person claiming such property, shall have the right to have subpoena issued by the commissioner to compel the attendance of all witnesses deemed by such parties to be necessary for a full and complete hearing. All witnesses shall be entitled to the witness fee and mileage provided by law for legal witnesses, which fees

and mileage shall be paid as a part of the costs of such proceeding.

In the event the ruling of the commissioner is favorable to the claimant, the commissioner shall deliver to the claimant the narcotic drugs, marihuana or property so seized. If the ruling of the commissioner is adverse to the claimant, the commissioner shall proceed to sell or dispose of such contraband goods in accordance with the foregoing provisions hereof. The expenses of storage, transportation, etc. shall be adjudged as part of the cost of the proceeding in such manner as the commissioner shall fix.

Whenever in any proceeding under this chapter, a claim is filed for any vehicle, aircraft or boat seized, as hereinabove provided, the commissioner shall not allow the claim unless and until the claimant proves: (1) that he has an interest in such vehicle, aircraft or boat, as owner or otherwise, which he acquired in good faith; (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of the state of Tennessee relating to narcotic drugs or marihuana; and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any state relating to narcotic drugs or marihuana has a right with respect to such vehicle, aircraft or boat, that before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his office or agent, was informed, in answer to his inquiry at the headquarters of the sheriff, chief of police, principal federal narcotics officer engaged in the enforcement of the narcotics laws, or other principal local or federal law enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation.

Pending any proceeding to recover a vehicle, aircraft or boat seized hereunder, the commissioner may order delivery thereof to any claimant who shall establish his right to immediate possession thereof, and who shall execute, with one (1) or more sureties approved by the commissioner, and deliver to the commissioner, a bond in favor of the state of Tennessee and for the payment of a sum double the appraised value thereof as of the time of the hearing, and conditioned further that, if the vehicle, aircraft or boat is not returned at the time of hearing, the bond shall stand in lieu of and be forfeited in the same manner as such vehicle, aircraft or boat.

The commissioner of safety, in his discretion, is hereby authorized to appoint or designate a hearing officer to sit and set as such hearing officer at the request and in the absence of the commissioner of safety for the purpose of conducting such hearing as the commissioner may deem necessary. The hearing officer designated by the commissioner shall make findings of fact, conclusions of law, and recommendation for the issuance of the proposed order based thereon. If the commissioner concurs, said commissioner shall issue the order; or he may, upon review of the record, make such findings, conclusions, and issue such order as, in his discretion, the record justifies. The commissioner, himself, may hold such hearings as he may deem proper. Said hearing officer is likewise empowered to subpoena witnesses and compel their attendance and the production of records, memoranda, papers and other documents at any hearing authorized under this section.

At all hearings provided for herein, the commissioner or the hearing officer shall provide a stenographer or court reporter to take a stenographic record of the evidence adduced at such hearing. The claimant shall be entitled to a copy

of said stenographic record, upon application thereof, and upon paying the reasonable costs thereof to be fixed by the commissioner. The commissioner may make, and/or publish, such other and further procedural rules and regulations, not inconsistent with this section, as he deems proper, governing any hearing provided herein.

52–1405. *Action of commissioner reviewed—Certiorari—Appeal to Supreme Court.*—The action of the commissioner of safety may be reviewed by petition for common law writ of certiorari addressed to the circuit court of Davidson County which petition shall be filed within ten (10) days from the date the order of the commissioner is made.

Immediately upon the grant of the writ of certiorari the commissioner shall cause to be made, certified and forwarded to said court a complete transcript of the proceedings in said cause, which shall contain all the proof submitted before the commissioner. All defendants named in the petition desiring to make defense shall answer or otherwise plead to said petition within ten (10) days from the date of filing of said transcript, unless the time be extended by the court.

Said decision of the commissioner shall be reviewed by the circuit court solely upon the pleadings and the transcript of the proceedings before the commissioner, and neither party shall be entitled to introduce any additional evidence in the circuit court. The confiscated goods shall not be sold pending such review, but shall be stored by the department of safety until the final disposition of said case.

Within the discretion of the commissioner, the claimant may be awarded possession of said confiscated goods pending the decision of the circuit court under the petition for certiorari, provided, the claimant shall be required to execute a bond payable to the state of Tennessee in an amount double the value of the property seized, the sureties to be approved by the commissioner. The condition of the bond shall be that the obligors shall pay to the state, through the department, the full value of the goods or property seized, unless upon certiorari the decision of the commissioner shall be reversed and the property awarded to the claimant.

Either party dissatisfied with the judgment or decree of the circuit court may upon giving bond as required in other suits, appeal to the Supreme Court, and have a reexamination, in that court, of the whole matter of law and fact appearing in the record. Provided that when any such appeal is made the clerk of the circuit court in which such suit was pending shall include as a part of the record the original certified transcript of the proceedings had before the commissioner of safety when identified by the trial judge instead of bill of exceptions, which need not be made and filed. Said appeal shall be advanced upon the docket of the Supreme Court as one of such precedence, and heard as promptly as practicable.

52–1406. *Procedure final when no claim interposed.*—If no claim is interposed, such narcotic drugs, marihuana or other property shall be forfeited without further proceedings and the same shall be sold or disposed of as herein provided. The above procedure is the sole remedy of any claimant, and no court shall have jurisdiction to interfere therewith by replevin, injunction, supersedeas or in any other manner.

52–1407. *Disposition of proceeds.*—The proceeds of all seizures, confiscations and sales made pursuant to the provisions of this chapter shall be transmitted to the state treasurer and deposited in the state treasury; provided, that upon application of the commissioner such proceeds or any part thereof, may be allocated by the director of the budget to the department of safety as expendable receipts for use in the enforcement of this chapter and the other laws of this state regulating narcotic drugs and marihuana.

GRAY, Chief District Judge (concurring in part and dissenting in part).

I concur in the Court's conclusion that the Act in question violates the Constitution of the United States because the post-seizure procedures prescribed by the Act fail to meet the standards of the Fourteenth Amendment. I believe, however, that the pre-seizure provisions of the Act are also constitutionally impermissible, and I must, therefore, respectfully dissent from the conclusion that due process protections do not apply to such provisions.

Specifically, I believe that the Constitution prohibits the warrantless seizure, not incident to an arrest, of a vehicle and requires provisions for notice and hearing prior to seizure of vehicles, not incident to an arrest, where the owner whose vehicle is sought to be seized is not charged with transporting the contraband, absent such exceptional circumstances as would demonstrate probable cause to believe that the giving of notice would result in the vehicle's being spirited away by the owner.

At the outset it appears that only traditional forfeiture doctrine, supported by voluminous precedent, has persuaded the majority in this case that traditional constitutional requirements cannot be applied to forfeiture procedures. Thus it is necessary to examine the roots of the forfeiture doctrine and its current status.

Traditional forfeiture law is built upon a fiction, the fiction that the chattel or, in this case, the vehicle is guilty of some wrongdoing. The sovereign, therefore, pursued the thing and not the owner thereof. Consequently, the proceeding through which the sovereign accomplished forfeiture of this type was *in rem*, rather than *in personam*. Building upon this fiction, it was held that the thing, the chattel, became forfeited to the sovereign at the time *it* committed the wrongdoing. Since the chattel was the wrongdoer and it was the chattel, not the owner, against which the sovereign was proceeding, it followed that there were in fact no rights that could be asserted against the sovereign. The owner had no rights he could assert because the action was not *in personam* and, of course, the chattel itself had no rights.

This chain of reasoning is manifested in the early American cases which dealt with and defined forfeiture. For example, the Supreme Court held in 1827:

"In the contemplation of the common law, the offender's right was not divested until the conviction. But this doctrine never was applied to seizures and forfeitures, created by statute, *in rem*, cognizable on the revenue side of the exchequer. The thing is here considered as the offender, or rather the offense is attached primarily to the thing; and this, whether the offense be malum prohibitum, or malum in se." The Palmyra, 12 Wheat. 1, 15, 6 L.Ed. 531 (1827).

This reasoning led the Court to the conclusion that " . . . the proceeding *in rem* stands independent of, and wholly unaffected by, any criminal proceeding *in personam*." *Id.*, p. 16, 6 L.Ed. 531.

In 1878 the Supreme Court, in Dobbins Distillery v. United States, 96 U.S. 395, 24 L.Ed. 637, discussed with approval the opinion of Mr. Chief Justice Marshall, written while the Chief Justice was "riding circuit" under the system then prevailing, in United States v. The Little Charles, Fed.Cas.No.15,612, 1 Brock, 347 (1818), saying at p. 402 of 96 U.S.:

"Neither confessions nor admissions of the master, it was contended, were admissible to prove the guilt of the owner; and the Chief Justice added that, if the case was such as was supposed in argument, the objection would be entitled to great weight. But he remarked that the [forfeiture] proceeding was one against the vessel, for an offense committed by the vessel, which is not less an offense, and does not the less subject her to forfei-

ture because it was committed without the authority and against the will of the owner."

In the case of Goldsmith, Jr.—Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1921), the Court thrust at the heart of the forfeiture doctrine when it said,

> " . . . Congress interposes the care and responsibility of their owners in aid of the prohibitions of the law and its punitive provisions, by ascribing to the property a certain personality, a power of complicity and guilt in the wrong. In such case there is some analogy to the law of deodand, by which a personal chattel that was the immediate cause of the death of any reasonable creature was forfeited.

> "But whether the reason for § 3450 be artificial or real, it is too firmly fixed in the punitive and remedial jurisprudence of the country to be now displaced." *Id.*, pp. 510–511, 41 S.Ct. at 191.

These cases make it clear that the aspect of forfeiture that made it unique in the law was the fiction of the chattel committing the wrongdoing, and the basis of the rationale underlying traditional forfeiture doctrine is this fiction.

The nature and use of this legal fiction led to the view that the constitutional protections were inapplicable. A sanctum was thereby created in which forfeiture was enclosed, a sanctum that the earlier courts refused to invade. And, although the courts repeatedly criticized the broad thrust and scope of forfeiture, particularly the absence of the usual procedural guarantees, those same courts upheld forfeiture laws because they felt so compelled by the weight of precedent. [An example of this reasoning can be found in the case of Interbartolo v. United States, 303 F.2d 34 (1st Cir. 1962).] This is the view adopted by the majority in the case at bar.

What has been referred to as traditional forfeiture doctrine, then, is simply the view that forfeiture is unique in the law, a bird of a different feather,

and that this peculiar nature of forfeiture, together with the legal fiction inherent in that nature, somehow avoids the application of the usual constitutional guarantees. The courts that have followed this doctrine have held implicitly that they were helpless to apply the constitutional standards as long as the sanctum enclosing forfeiture, as a legal doctrine, remained intact.

I am of the opinion that certain recent decisions have either eroded or destroyed the underlying rationale that has prevented the application of the constitutional standard of fundamental fairness, and this is the basis for this dissent. This view is premised on the fact that traditional forfeiture doctrine depends on the continued validity or viability of the legal fiction; and, if the fiction is destroyed, the entire rationale falls of its own weight and there is then no bar to subjecting forfeiture proceedings to the eye of constitutional scrutiny. The significance of these recent cases relied on by me and discussed *infra* lies in their treatment of the fiction and not in the factual situations presented or the precise holdings.

The most significant recent decision regarding forfeiture doctrine is United States v. Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), wherein the Court indicated that the seizure of an innocent individual's personal property would raise serious questions under the due process clause of the Fifth Amendment.

> "But before the Government's attempt to distinguish Boyd could even begin to convince, we would first have to be satisfied that a forfeiture statute, with such a broad sweep, did not raise serious constitutional questions under that portion of the Fifth Amendment which commands that no person shall be 'deprived of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation.' Even Blackstone, who is not known as a biting critic of the English tradi-

tion, condemned the *seizure* of the property of the innocent as based upon a 'superstition' inherited from the 'blind days' of feudalism. And this Court in the past has recognized the difficulty of reconciling the broad scope of traditional forfeiture doctrine with the requirements of the Fifth Amendment. . . . " *Id.*, pp. 720–721, 91 S.Ct. at 1044 [Emphasis added].

Admittedly, the foregoing language is *dicta*, the Court having declined to rule on due process grounds in favor of the ground of self-incrimination. The language does indicate the Court's predisposition to impose due process standards where property is seized from an innocent person under the broad sweep of a forfeiture statute and, indeed, is convincing that the Court would have relied on those standards had not others been presented therein. The language also indicates that the Court was referring to more than just *forfeiture* of the property in its ultimate sense; it was also referring to seizure of property under the forfeiture statute. Moreover, it is implicit in the opinion that the Supreme Court ignored the fiction that the chattel was the wrongdoer and that it automatically was forfeited to the sovereign at the time that the wrong was committed.

Another important decision in this respect, particularly for this Court, is McKeehan v. United States, 438 F.2d 739 (6th Cir. 1971), wherein the United States Court of Appeals for the Sixth Circuit refused to follow traditional forfeiture rules and the fiction. The Court found four features in the case that "gave a basis" for holding as follows:

"The lack of any valid legislative, administrative or revenue purpose for pursuing the item *in rem,* rather than the person of the possessor, gives us a basis for conceiving of this action for certain constitutional purposes as an action *in personam.* In so doing, we are not creating a 'legal fiction', but destroying one." Id., p. 745.

*McKeehan* is, of course, not strictly analogous to the case at bar. Neither can it be contended that *McKeehan* overturned all the traditional forfeiture law, nor that the case compels the result urged by this dissent. But it does express the Court's willingness to look behind that great wall of precedent, as well as indicating that the fiction on which traditional forfeiture doctrine rests is no longer viable in this circuit. The importance of *McKeehan* lies in its focus on the rights of the owner and, in this respect, shows that this circuit has taken a direction consistent with that indicated by the Supreme Court in United States v. Coin & Currency, *supra.* It can be said fairly, therefore, that these two decisions support the narrow proposition that the courts are no longer prevented from applying constitutional standards to forfeiture proceedings merely by reason of the existence of the wealth of precedent concerning traditional forfeiture doctrine.

The third case represents the logical terminus of the trend and the adherence to the proposition stated above. In United States v. One Bally Sun Valley Pinball Machine, 340 F.Supp. 307 (W. D.La.1972), the Court noted that, prior to *Coin & Currency,* there was no doubt as to the validity of forfeiture proceedings, even against innocent owners; but the Court observed that *Coin & Currency* and subsequent cases (among which is McKeehan v. United States, *supra*) have illustrated sharply the changing attitude toward what once was a routine procedure. Based on that observation, the Court went on to hold that where the chattel was not *per se* contraband, it could not be seized without prior notification to the owner. Although *Bally Sun* is factually dissimilar to the instant case and involved a somewhat different type of forfeiture from that presented herein, its analysis of the trend established by *Coin & Currency,* its utter disregard for the fiction inherent in the action and the *in rem* characterization of the proceedings and its focus on the owner's rights in due process terms sup-

port the conclusion I would reach in the case at bar.

Simply stated, that conclusion is that the fiction that the chattel, the thing, is guilty of wrongdoing is no longer intact and that, therefore, the Court is not precluded from applying the due process clause to forfeiture proceedings. Thus I believe that this Court can, and should, subject the forfeiture provisions of the Tennessee Drug Control Act of 1971 to the limitations commanded by the Constitution.

I would therefore hold, as indicated in the opening paragraphs of this opinion, that the Act violates the Constitution, in addition to the violations found by the majority, by permitting the warrantless seizure, not incident to an arrest, of a vehicle, and by its failure to provide for notice and hearing prior to seizure, not incident to an arrest, where the owner whose vehicle is sought to be seized is not charged with transporting the contraband, absent such exceptional circumstances as would demonstrate probable cause to believe that the giving of notice would result in the vehicle's being spirited away by the owner. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed. 2d 556 (1972).