**UNITED STATES v. ONE 1947 OLDSMOBILE SEDAN, etc.**

Civ. No. 875–49.

United States District Court
Third D. New Jersey.
April 15, 1952.

John J. Corcoran, Jr., Asst. U. S. Atty., Newark, N. J., for libelant.

Leo S. Carney, East Newark, N. J., for claimants.

SMITH, District Judge.

This is a civil proceeding under Sections 781 to 788 of Title 49 U.S.C., 49 U.S.C.A. §§ 781 to 788, to enforce the forfeiture of a motor vehicle heretofore seized by the agents of the Narcotics Division of the Bureau of Internal Revenue. The libel charges that the vehicle was used to transport and to facilitate the transportation of "contraband," to wit, narcotic drugs, in violation of Section 781 of the said Act. The right of the libelant to enforce the forfeiture is challenged by the owners of the vehicle, Carmen Tino and Edward Pesa, hereinafter identified as the Claimants. The only question raised is one of law.

### Facts

#### I.

The Claimants were engaged in the business of renting "motor vehicles, without a driver," under the laws of New Jersey, R.S. 45:21-1 et seq., N.J.S.A. 45:21-1 et seq. Pursuant to written agreements between them and one Walter Krenkiewicz, the motor vehicle here in question was rented to the latter on several occasions prior to November 28, 1948, and on each occasion, except the last, was returned upon completion of the rental period or shortly thereafter.

#### II.

The motor vehicle was rented to the said Krenkiewicz on November 20, 1948 and remained in his possession until the night of November 28, 1948, when he was arrested by the local police on suspicion of burglary. The investigation thereafter conducted revealed that earlier on the same night Krenkiewicz had unlawfully entered the Clinton Pharmacy, East Orange, N. J., and had stolen therefrom $1,100 and a quantity of narcotic drugs.

#### III.

When questioned by the agents of the Division of Narcotics Krenkiewicz admitted the theft and informed the agents that he had transported the stolen merchandise to his home in the vehicle in question. The agents thereafter, with the consent of Krenkiewicz, searched the cellar of his home and discovered the narcotic drugs, which they seized. The seizure of the motor vehicle was then made.

#### IV.

It is admitted by Krenkiewicz, who was called as a witness by the libelant, that the vehicle in question was used not only on the night of November 28th but on several occasions prior thereto, when he burglarized other places of business. There is no evidence, however, that he used the vehicle to transport or facilitate the transportation of "contraband articles," as defined by the statute.

### Discussion

The right of the libelant to seize and enforce the forfeiture of a motor vehicle used in violation of the law is statutory. 49 U.S.C.A. §§ 781-788. Its right in the instant case is governed by the Act of August 9, 1939. Section 1(a) of the Act, 49 U.S.C.A. § 781(a), declares: "It shall be unlawful (1) to transport, carry, or convey any contraband article in, upon, or by means of any * * *, vehicle, or * * *; (2) to conceal or possess any contraband article in or upon any * * *, vehicle, * * *; or (3) to use any * * *, vehicle, * * * to facilitate the transportation, carriage, conveyance, * * *, possession * * *, of any contraband article." Section 2 of the Act, 49 U.S.C.A. § 782, provides: "Any * * *, vehicle * * * which has been or is being used in violation of any provision of section 781 of this title, * * * shall be seized and forfeited". The exceptions contained in this section are not pertinent here and are therefore omitted.

The term "contraband article" is defined by the pertinent provisions of Section 1(b), 49 U.S.C.A. § 781(b) as follows: "Any narcotic drug which has been or is possessed with intent to sell or offer for sale in violation of any laws or regulations of the United States dealing therewith, or which is sold or offered for sale in violation thereof, or which does not bear appropriate tax-paid internal-revenue stamps as required by law or regulations". This statutory definition is determinative of the ultimate question, to wit: Were the narcotic drugs, previously stolen from one in legal possession thereof, "contraband articles" within the meaning of the Act? We are of the opinion that the answer must be in the negative.

 The statute is penal in its nature and therefore must be strictly construed; it may not be extended by implication to cover situations not clearly within its express provisions. It is our opinion that the term "contraband article" did not embrace the mere possession of narcotic drugs acquired by theft, especially where, as here, the packages bore "appropriate tax-paid internal-revenue stamps as required by law". We are willing to concede, however, that if narcotic drugs thus acquired were thereafter possessed "with intent to sell" or were "sold or offered for sale" in violation of the law, a motor vehicle used in such a violation might be subject to forfeiture. The evidence before the Court does not disclose such a situation.

The evidence here presented will not support a determination that the narcotic drugs were possessed by Krenkiewicz, at the time they were transported to his home, "with intent to sell" in violation of the law, the test prescribed by the statute; in fact, he testified that at that time he had no knowledge that the merchandise he had stolen included narcotic drugs. The only intent which Krenkiewicz had was to conceal the loot after he had discovered that it included narcotic drugs.

Any doubt as to the strict construction we have here adopted seems to be dispelled by the Amendment of August 9, 1950, 49 U.S.C.A. § 781(b) (1). The definition was therein expanded so as to cover situations not theretofore covered. The term "contraband article" is therein defined as follows: "Any narcotic drug which has been or is possessed with intent to sell or offer for sale in violation of any laws or regulations of the United States dealing therewith; or which *has been acquired or is possessed, sold, transferred,* or offered for sale, in violation of any laws of the United States dealing therewith; or *which has been acquired by theft, robbery, or burglary and carried or transported * * *, from any state, * * *, to another state, * * *;* or which does not bear appropriate tax-paid internal-revenue stamps as required by law or regulations". We have emphasized the amendatory provisions.

The purpose of the amendment is explained in the House Report, No. 2751 United States Code Congressional Service, 1950, Vol. 2, page 2953. It is therein stated: "In recent years there has been an increase in the number of narcotics thefts, robberies, and burglaries from drug stores, physicians' offices, and other places from which narcotic drugs are dispensed. The perpetrators of these crimes rely to a large extent on the use of high-powered automobiles to make their escape from the jurisdiction in which the crime took place. When captured, the narcotic drugs thus stolen often are found to bear the required internal-revenue stamps, and consequently seizure and forfeiture of the vehicles used is difficult to obtain, particularly when the drugs have not been sold by the thieves subsequent to the theft. The proposed legislation would attack this problem by permitting the seizure of vessels, vehicles, and aircraft used in connection with the traffic in stolen drugs, *when such drugs are carried or transported in interstate commerce, or within any territory, possession, or the District of Columbia."* (Emphasis by the Court.)

 It will be observed that even the amendment does not cover the situation disclosed by the evidence in this case. The amendment defines as "contraband" narcotic drugs "acquired by theft, robbery, or burglary" and thereafter "carried or transported" in interstate commerce. The motor vehicle herein question was used by Krenkiewicz to transport the stolen drugs from

the place of the theft to his home, both within the State of New Jersey.

### Conclusion

The motor vehicle was not subject to seizure and forfeiture under the pertinent provisions of the Act, 49 U.S.C.A. §§ 781 and 782. The libel must, therefore, be dismissed.