**UNITED STATES of America,**
**Plaintiff,**

v.

**ONE 1962 FORD THUNDERBIRD Serial**
**Number 2Y83Z124318, Defendant.**

**No. 64 C 396.**

United States District Court
N. D. Illinois, E. D.

Aug. 20, 1964.

Edward V. Hanrahan, U. S. Atty., and Erwin I. Katz, Asst. U. S. Atty., for plaintiff.

Joel M. Carlins, Kovin, Ashen & Carlins, Chicago, Ill., for intervenor, Hotpoint Employees' Credit Union.

WILL, District Judge.

This is a proceeding instituted by a libel seeking forfeiture of the vehicle-defendant pursuant to the provisions of 49 U.S.C. § 782, which provides in relevant part as follows:

> "Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited: *Provided*, That no vessel, vehicle, or aircraft used by any person as a common carrier in the transaction of business as such common carrier shall be forfeited under the provisions of this chapter unless it shall appear that (1) in the case of a railway car or engine, the owner, or (2) in the case of any other such vessel, vehicle, or aircraft, the owner or the master of such vessel or the owner or conductor, driver, pilot, or other person in charge of such vehicle or aircraft was at the time of the alleged illegal act a consenting party or privy thereto; \* \* \*".

Intervenor, Hotpoint Employees' Credit Union (Credit Union) moves to dismiss the libel, alleging that the statutory provision is unconstitutional.

The following facts are admitted for the purposes of this motion:

(1) Credit Union is the holder of a note, secured by a chattel mortgage on the above-named vehicle.

(2) On September 18, 1962, a lien was duly recorded with the Secretary

of State of Illinois against the motor vehicle title. This lien is still in existence as security for the amount due on the note.

(3) On or about March 21, 1963, the vehicle was seized by the United States on the undisputed allegation that Carlos Aulet, mortgagor and debtor to the Credit Union, used the vehicle for the transportation of narcotics in violation of applicable federal laws.

Credit Union's challenge to the constitutionality of the statute rests on three grounds; first, that it impairs the obligation of a contract, inasmuch as forfeiture will cancel the lien and the chattel mortgage; second, that the statute is vague, indefinite and uncertain in that no provision is made for holders of a security interest; and third, that the statute violates the due process provisions of the Fifth Amendment to the Constitution by taking the security interest of innocent lienors without compensation.

The first of these challenges may be disposed of in short order. The contracts clause of the Constitution (Art. I, § 10) is restricted to state action. It is not directed against the federal government. The federal government need only adhere to the due process requirements of the Fifth Amendment. Miller v. Howe Sound Min. Co., 77 F.Supp. 540, 545 (E.D.Wash.1948). No due process argument can be maintained on this ground. A contractual obligation is not impaired by a statute in effect prior to the contract date. Oshkosh Waterworks v. Oshkosh, 187 U.S. 437, 446, 23 S.Ct. 234, 47 L.Ed. 249 (1903). The statute here involved was enacted in 1939, long before Credit Union's contract.

Second, the statute is neither vague, indefinite nor uncertain. If anything, it is the clarity of the statutory language, leaving no room for a construction affording protection to innocent lienors, which raises the question of its constitutionality. As Judge Wilson of the Eastern District of Tennessee has observed, "(t)he laws relating to forfeitures do cause one who is raised in the traditions of the Anglo-American principles of justice and who is committed to the constitutional principles of due process and just compensation to search closely for a constitutional violation." United States v. One 1961 Cadillac Hardtop Automobile, 207 F.Supp. 693, 698 (E. D.Tenn.1962). To be sure, Congress has enacted more explicit statutes, stating unqualifiedly that "no property rights shall exist in any such property", 26 U.S.C. § 7302, United States v. One 1958 Pontiac Coupe, 298 F.2d 421, 422 (7 Cir.1962), just as it has, on occasion, made provisions for innocent lienors in other forfeiture enactments. See, e. g., § 26, National Prohibition Act, 41 Stat. 305, 315; see also, 18 U.S.C. §§ 3615, 3617. Where there has been doubt as to the application of either a forfeiture statute protecting innocent lienors or one which was silent, the Supreme Court has held that the statute protecting innocent lienors should apply. Richbourg Motor Co. v. United States, 281 U.S. 528, 50 S.Ct. 385, 74 L.Ed. 1016 (1930). No such doubt is present here.

It is for Congress to select the language which expresses its legislative judgments. The courts only ask if that expression clearly communicates the result. We cannot, under the guise of vagueness, nullify a statute which enacts a policy with which we may not agree.

The third argument advanced by Credit Union, violation of the due process clause of the Fifth Amendment, poses greater difficulty. For clarity, this argument must be considered in three parts; first, that forfeiture takes the property of an innocent lienholder without just compensation; second, that in making a statutory exception for common carriers, Congress has traversed the bounds of due process by denying lienholders the equal protection of the law; and third, that while Congress has provided a procedure for seeking remission of forfeiture, this procedure fails to accord the necessary constitutional protections to one seeking remission.

Turning to the first point, it is conceded that decrees of forfeiture are well-established as exercises of governmental power. Their roots, as the Supreme Court has noted, reach back to the law of *deodand* and even to the Mosaic law. Goldsmith, Jr.—Grant Co. v. United States, 254 U.S. 505, 510–511, 41 S.Ct. 189, 65 L.Ed. 376 (1921). Under these influences, the fiction of an *in rem* proceeding has been maintained. It is the vehicle which is the defendant. Were the fiction followed full-length, one might argue that forfeiture is not a taking of property. It is as if the obligation became worthless by virtue of the execution of the debtor for a crime. Thus the lien, an obligation attached to the car, becomes worthless when the car is forfeited. Just as execution of the criminal was not a taking of the creditor's property, so forfeiture is not a "taking" of the lien. We prefer, however, to consider the statutory enactments on grounds more suitable than those which stem from the fiction of an *in rem* proceeding.

We reject any contention that, inasmuch as the personal obligation underlying the lien remains, Credit Union suffers no loss. Recordation of a lien creates a vested property right. While the prior existence of the statute obviates any question of due process as previously indicated, it does not necessarily follow that a lienor's property right is, as a result of the statute, conditional, and therefore subject to divestment by forfeiture on the happening of a subsequent act. While every contract is made subject to existing law, we are not satisfied that this principle necessarily applies where the statutory provisions are penal in nature. A forfeiture statute is a penal statute. United States v. One 1947 Oldsmobile Sedan, 104 F.Supp. 159, 161 (1952). It is to be narrowly construed and we hesitate to imply an intent to affect contracts from a statute which looks only to criminal conduct and is wholly silent on contractual rights unrelated to the criminal act. Credit Union has a property right and, if forfeiture is decreed, it will be a taking of property. The question is whether Congress may constitutionally provide that this property be taken without compensation.

We find ourselves confronted with an instance where Congress may provide for such a taking without compensation. Where Congress, in the implementation of its constitutional powers, provides for penalties such as forfeitures, such action is not a taking of property in a constitutional sense. It is not an instance of eminent domain, in which property is taken because the *use of such property* is beneficial to the public. Rather, the property interest is infringed because Congress has deemed it necessary in order to preserve other incidents of the public welfare. As such, it represents a federal exercise of a police power to which the constitutional requirement of compensation is inapplicable. See Hamilton v. Kentucky Distillers Co., 251 U.S. 146, 156–157, 40 S.Ct. 106, 64 L.Ed. 194 (1919); United States v. One 1961 Cadillac Hardtop Automobile, supra, 207 F.Supp. at 699.

By decreeing forfeiture of vehicles used to transport narcotics in violation of federal internal revenue and interstate commerce regulations, Congress has sought to establish a "secondary defense against a forbidden use". Van Oster v. State of Kansas, 272 U.S. 465, 467, 47 S.Ct. 133, 134, 71 L.Ed. 354 (1926). While as a legislator, we might express grave doubts as to the efficacy of the policy as it affects innocent lienors, as a court, we cannot say that the legislative judgment is constitutionally invalid.

Credit Union next points to the statutory provision (set out supra) creating an exception for common-carrier vehicles in circumstances where the common-carrier is innocent. It argues that even if a forfeiture statute is constitutional, this statute violates due process by depriving other innocent owners of the equal protection of the law.

The common-carrier exception has been challenged once before.

United States v. One 1957 Oldsmobile Automobile, 256 F.2d 931 (5 Cir.1958). There, the Fifth Circuit found that common-carriers were a proper class for separate treatment. It noted that

> "(t)he opportunity of the owner of a common carrier to detect or prevent carriage by one of its passengers * * * of a small quantity of narcotics is obviously slight as compared with the opportunity of the owner of an automobile * * *" 256 F.2d at 933.

Surely, the same principle would apply to credit unions, finance companies and others in commercial channels whose contact with the contraband is remote. However, even if this contention be accurate, it does not bring us to the constitutional question. In light of our earlier conclusions, the statute would be nonetheless constitutional if it provided for forfeiture of common-carrier vehicles as well. Clearly, Congress is not obliged to exercise its constitutional powers to the fullest extent possible. It may choose to stop short of the full exercise of its power with respect to a particular class. If that class is reasonable, the judicial inquiry ends. The fact that Congress has determined not to except other classes is, again, a legislative judgment. The wisdom of the policy does not present a constitutional issue for the judiciary.

The last constitutional challenge raised concerns an additional enactment, 19 U.S.C. § 1618, under which the Secretary of the Treasury, upon finding that a forfeiture "was incurred without willful negligence or without any intention on the part of petitioner to defraud the revenue or to violate the law * * * may remit or mitigate the (forfeiture) upon such terms and conditions as he deems reasonable and just. * * *" Under Executive Order No. 6166, June 10, 1933, 5 U.S.C. §§ 124–132 and note, this authority is transferred to the Attorney General in cases where judicial proceedings are instituted. Credit Union's petition for remission was denied by the Attorney General on August 26, 1963.

Credit Union urges that the relief provided by this section is no relief at all, inasmuch as the Attorney General, after finding an absence of "wilfull negligence", etc., is still vested with discretion to deny remission of the forfeiture. Moreover, the Administrative Procedure Act, 5 U.S.C. § 1001 et seq., does not apply in such instances. There is no requirement of notice and hearing and no possibility of judicial review of the determination. It has been viewed simply as an "act of grace on the part of the Cabinet officer". United States v. One 1946 Plymouth, 73 F.Supp. 88, 90 (E.D. N.Y.1946). See also, United States v. One 1957 Buick Roadmaster, 167 F.Supp. 597 (D.Mich.1958).

Inasmuch as Congress may constitutionally provide for forfeiture without the possibility of remission, we must reject Credit Union's contention that the unlimited discretion vested in the Attorney General makes the forfeiture an unconstitutional taking of property.

It would appear that the grant of power to the Attorney General may be so broad as to allow him to treat remission petitions of two identically situated claimants in different ways. However, the action of the Attorney General is not in issue in this proceeding; it is wholly apart from the forfeiture decree. Indeed, if the remission provisions suffer from a constitutional infirmity, a successful challenge of that section would not affect the constitutional provisions relating to forfeitures.

For the reasons stated above, 49 U.S.C. § 782 is constitutional and intervenor's motion to dismiss the libel must be denied.