June 3, 1977

## 77-33  MEMORANDUM OPINION FOR THE SECRETARY OF THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

### Constitutionality of S. 1397—Federal National Mortgage Association

The Attorney General has asked that we respond to your request for an opinion concerning the constitutionality of the provisions of S. 1397. The proposed legislation would amend the Federal National Mortgage Association Charter Act to increase the size of the Board of Directors of the Federal National Mortgage Association (FNMA), and would make FNMA subject to the Freedom of Information Act.

FNMA's counsel has prepared a legal memorandum arguing that S. 1397 raises Fifth Amendment questions regarding the prohibitions against the taking of private property without "due process of law" or "just compensation." Your legal counsel prepared a rebuttal paper to FNMA counsel's arguments, and concluded that FNMA's arguments were without merit. We have reviewed the proposed legislation and relevant case law and it is our conclusion that the enactment of S. 1397 would constitute a legal exercise of congressional power and clearly stand within the boundaries of the Constitution.

At present, the Board of Directors of FNMA (the Board) consists of 15 persons, 5 appointed annually by the President and 10 elected annually by the common stockholders.[1] S. 1397 would amend § 308(b) of the National Housing Act to allow the President to appoint 9 directors while leaving the number elected by the common stockholders at 10. This proposed amendment raises four questions of law that require discussion in order to determine the ultimate question of the constitutionality of S. 1397.

> (1) Did the charter granted to FNMA by the Government create contractual rights between the Government, FNMA, and the stockholders?

---

[1] See 12 U.S.C. § 1723(b) (1970). Initially, FNMA's preferred stock was held by the Secretary of the Treasury. It was retired in accordance with the Act, and FNMA became a privately owned corporation. See 12 U.S.C. § 1718 (1970).

(2) Are contractual rights derived from a legislative act protected by the Constitution?

(3) Do the stockholders of FNMA have vested rights to the continuation of FNMA's charter in its present form?

(4) If the proposed legislation were enacted into law, would it effect a "taking" of FNMA's stockholders property without "due process of law" or "just compensation"?

In our opinion, the answer to the first two questions is yes and to the latter two is no.

The starting point, more out of tradition than legal necessity, is the *Dartmouth College Case*.[2] The Supreme Court held that the granting of a charter by the State of New Hampshire to the school created a contract between the State, the trustees, and the individuals who conveyed property to the corporation. When the State of New Hampshire attempted to amend the charter to increase the number of trustees, the Supreme Court held that the legislation amending the charter violated Article I, § 10 of the United States Constitution, which, *inter alia,* states that "[n]o state shall . . . pass any . . . Law impairing the obligation of Contracts."

While the congressional action proposed in S. 1397 is analogous to that involved in the *Dartmouth College Case,* it is well settled that "[t]he Contract Clause . . . is a limitation on state rather than federal action."[3] And, the question whether the Federal Government can pass laws that modify, amend, or repeal contracts between it and private parties has been answered in the affirmative.[4] However, "a measure of protection against contract impairment by the federal government is given by the Fifth Amendment."[5] The Supreme Court, in *Lynch* v. *United States,*[6] held that rights under a contract with the Government are property, which the Fifth Amendment protects from a statutory "taking" without just compensation.[7]

It seems clear that (1) the Federal Government is not restrained by Article I, § 10 of the Constitution from impairing the obligation of contracts; (2) the Federal Government, through legislation, can create contractual rights with private parties; and (3) these contractual rights are property that is protected by the Fifth Amendment. Thus, we conclude that the Federal Government has the power to alter the obligation of contracts and "need only adhere to the due process requirements of the Fifth Amendment."[8]

---

[2] *Dartmouth College* v. *Woodward,* 17 U.S. (4 Wheat) 518 (1819).

[3] *John McShain, Inc.* v. *District of Columbia,* 205 F. 2d 882, 883 (D.C. Cir., 1953).

[4] *See cases cited infra,* at notes 9, 10, and 12.

[5] *John McShain, Inc.* v. *District of Columbia, supra,* note 3, 205 F. 2d at 884.

[6] 292 U.S. 571 (1934).

[7] *Id.* at 579.

[8] *United States* v. *One 1962 Ford Thunderbird,* 232 F. Supp. 1019, 1021 (N.D. Ill., 1964).

The case law supports the foregoing conclusion.[9] As the Supreme Court stated in *Federal Housing Administration* v. *The Darlington, Inc.,*[10] " '[s]o long as the Constitution authorizes the subsequently enacted legislation, the fact that its provisions limit or interfere with previously acquired rights does not condemn it. Immunity from federal regulation is not gained through forehanded contracts.' " [11]

Moreover, at least one case suggests that the Federal Government can modify or rescind a contract by later legislation without regard to the prohibitions of the Fifth Amendment, except where rights are vested.[12] This raises the question whether the stockholders of FNMA have a vested right to the continuance of FNMA's charter in its present form.

The case of *Fahey* v. *O'Melveny & Myers* [13] teaches that, to determine whether the stockholders of FNMA have a vested right in its present form, one must look first at the nature of the contract. Although not the same case, *O'Melveny & Myers* points to the right legal direction in the present matter. Like FNMA, the privately owned corporation in *O'Melveny & Myers* was a creature of Federal legislation. The predecessor of the Federal Home Loan Bank Board had abolished the Federal Home Loan Bank of Los Angeles and Portland (Oregon) and merged them into a new Federal Home Loan Bank of San Francisco. The court reviewed the Home Loan Bank Act and the contractual obligations it established, and concluded that

> ". . . a Federal Home Loan Bank is a federal instrumentality . . . neither the bank nor its association members, although they are nominally stockholders, acquire under the provisions of the Bank Act, any vested interest in the continued existence of said bank or any legally protected private rights which would enable them to invoke the due process clause."[14]

The court noted that "[t]his legislatively created system of Home Loan Banks exemplifies the principle that whatever rights and privileges Congress may constitutionally confer, it may withhold. . . ." [15]

Similarly, the Federal National Mortgage Association Charter Act provides the only authority for the creation of FNMA, and expressly

[9] *See, Norman* v. *B. & O. R. Co.,* 294 U.S. 240, 309-310 (1935), holding that "[t]here is no constitutional ground for denying to the Congress the power expressly to prohibit and invalidate contracts although previously made, and valid when made, when they interfere with the carrying out of the policy it is free to adopt;" *Hart* v. *Aluminum Co. of America,* 73 F. Supp. 727, 728 (W.D. Pa., 1947), stating that "[b]y a subsequent statute Congress may withdraw rights granted by a statute without violating any provision of the Constitution"; and *Home Building & Loan Association* v. *Blaisdell,* 290 U.S. 398, 437 (1934), where the Court stated that "[t]he economic interests of the State may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts."

[10] 358 U.S. 84 (1958).

[11] *Id.* at 91.

[12] *Southwestern Petroleum Corporation* v. *Udall,* 361 F. 2d 650, 654 (10th Cir., 1966).

[13] 200 F. 2d 420 (9th Cir., 1952).

[14] *Id.* at 446.

[15] *Ibid.*

authorizes its business existence. While, under the statute, after a transition period, it was to become a privately owned corporation, it is a corporation of the United States. Unlike *O'Melveny & Myers,* the charter did not invest FNMA "with all the attributes and characteristics of a purely private corporation and immediately clothed it and all of the properties in its control and possession with all of the protections provided by general law as in a case where a purely private corporate enterprise was involved."[16]

The legislative history demonstrates that FNMA was to be a "Government-sponsored private corporation" with "a status analogous to that of the Federal land banks and the Federal home loan banks." [17] Moreover, 12 U.S.C. § 1723a(h) provides that "[t]he Secretary of Housing and Urban Development shall have general regulatory power over the Federal National Mortgage Association and shall make such rules and regulations as shall be necessary and proper to insure that the purposes of this subchapter are accomplished."[17]

FNMA was organized to carry out a public policy.[18] Its organization and incorporation are pursuant to a law of Congress which authorized its undertaking. Thus, all obligations on the part of the Government and any rights of the shareholders derived from those obligations "must be understood as having been made in reference to the possible exercise of the rightful authority of the Government, and that no obligation of a contract 'can extend to the defeat' of that authority."[19]

As previously noted, it is true that Congress intended that the stock of FNMA be privately owned, but it also intended that the hand of the Federal Government would continue to rest upon its shoulder; it remains subject to the regulatory oversight of both the Department of Housing and Urban Development and the Department of the Treasury.[20] It has been stated that "[t]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." [21]

It is our opinion that FNMA's stockholders have no vested right [22] to the continued existence of FNMA in its present form and no protected private right that would enable them to invoke the prohibitions of the Fifth Amendment.[23] To vest them with such a right would be to tie the

---

[16] *Fahey* v. *O'Melveny & Myers, supra,* note 13, 200 F. 2d at 442.

[17] *See* S. Rep. No. 1123, 90th Cong., 2d Sess. 79 (1968).

[18] 12 U.S.C. § 1723a(h) states that "[t]he Secretary may require that a reasonable portion of the corporation's mortgage purchases be related to the national goal of providing adequate housing for low and moderate income families. . . ."

[19] *Norman* v. *B. & O. R., supra,* note 9, 294 U.S. at 305. "Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as postulate of the legal order . . . ." *Home Building & Loan Association* v. *Blaisdell, supra,* note 9, 290 U.S. at 435.

[20] *See* 12 U.S.C. §§ 1717(a)-(b), 1718, 1719, and 1723a(h) (1970).

[21] *FHA* v. *The Darlington, Inc., supra,* note 10, 358 U.S. at 91.

[22] *See text, supra* at pages 5-7 and note 35, *infra.*

[23] *See text, supra* at notes 14 and 15, and note 35, *infra.*

hands of Congress in its attempt, through legislation, to provide adequate housing for its citizens.[24] Only recently, the Supreme Court stated that "[a]s is customary in reviewing economic and social regulation, however, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure."[25]

The final question on this matter is whether S. 1397 would result in "taking" of FNMA's stockholders' property without "due process of law" or "just compensation"? For the reasons set forth above, we respond in the negative. We concluded above that FNMA stockholders have no vested rights in the continuation of the FNMA charter in its present form. However, even if FNMA's stockholders have an "inchoate" or a "vested" right that is protected by the Fifth Amendment, we do not think the action contemplated by the proposed legislation would enable them to invoke the prohibitions of the Fifth Amendment. As was pointed out in *El Paso* v. *Simmons*,[26] ". . . it is not every modification of a contractual promise that impairs the obligation of contract under federal law . . . ."[27] particularly, where a revision of law makes no real substantive change.

Furthermore, Congress expressly reserved the right to dissolve FNMA's charter.[28] Because Congress has the right under the enabling law to abolish FNMA, it arguably has the right to amend or otherwise alter the charter as it sees fit.[29] But, if FNMA's stockholders had an "inchoate" or "vested" right to its continuing in its present form, then a stockholder's right could be materially affected differently if the corporation continued under a different managerial scheme than if it were dissolved and liquidated.[30] These considerations, however, carry little import in the present matter.

As noted above, the proposed legislation would increase the number of persons appointed to the Board by the President from five to nine, leaving the number elected by the common stockholders standing at 10. Therefore, S. 1397 would have the effect of reducing the number of directors elected by FNMA's stockholders from two-thirds to one more than one-half. But, what effect would this contemplated action have on

---

[24] "The presumption is that such a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Dodge* v. *Board of Education,* 302 U.S. 74, 79 (1937).

[25] *United States Trust Company* v. *New Jersey,* 431 U.S. 1, at 23–24 (1977).

[26] 379 U.S. 497 (1965).

[27] *Id.* at 506–507.

[28] *See* 12 U.S.C. § 1717(a)(2)(B) (1970).

[29] Congress has the constitutional power to abolish a legislatively created corporation, even if it does not expressly reserve such power. Whatever rights and privileges Congress is authorized to give, it is also authorized to take away. *See text, supra* at note 15. It seems unnecessary to say that an existing legislature could not pass a law that a subsequent legislature could not amend or repeal.

[30] Upon liquidation the stockholders would be entitled to a *pro rata* share of the corporation's assets after payment of all indebtedness. Under a new managerial scheme, assuming they decided to end their association with the corporation, they would be forced to sell their stock at the market price, which might be more or less than they would receive if the corportion was dissolved.

any "inchoate" or "vested" rights of FNMA's stockholders? On its face it would appear to impair their ability to exercise control over the policies and business judgments of the corporation.[31]

First, as the Supreme Court stated in *Norman,* "[c]ontracts, however express, cannot fetter the constitutional authority of the Congress. Contracts may create rights of property, but when contracts deal with a subject matter which lies within the control of the Congress, they have a congenital infirmity."[32]

Thus, as was pointed out in *O'Melveny & Myers,* ". . . men do not go blindly into these Home Loan Bank ventures—they assume all of the obligations with all of the legislative and administrative 'strings' attached when a charter is granted to them by the Board."[33] In the present matter, the stockholders entered the arrangement with "all of the legislative and administrative 'strings' attached." One of those "strings" was the chance that a subsequent legislature would exercise its constitutional authority and amend FNMA's charter.

Second, § 4.09 and § 4.12(b) of the bylaws make clear that policies and business judgments can be made by a simple majority.[34] Thus, stockholders would still elect a majority of the Board's members.

Moreover, the extent to which the Board of Directors sets policies and makes business judgments must be considered in light of the fact that 12 U.S.C. § 1723a(b) provides that "[n]o stock, obligation, security, or other instrument shall be issued by the corporation without the prior approval of the Secretary."[35] This requirement stands whether the majority vote on a particular matter is 51 percent or 100 percent.[36] Thus, the proposed legislation would leave the stockholders close to where it found them; the harm, if any, is relatively small when all of the appropriate factors are considered.[37]

As we stated at the beginning, S. 1397 also would make FNMA subject to the provisions of the Freedom of Information Act. Little

---

[31] It should be noted that the proposed legislation in no way tampers with FNMA's common stock, and thus does not diminish its value to the stockholders or its voting strength.

[32] *Norman* v. *B. & O. R. Co., supra* note 9, 294 U.S. at 307–308.

[33] *Fahey* v. *O'Melveny & Myers, supra* note 13, 200 F.2d at 444.

[34] A two-thirds affirmative vote of the Board of Directors is required to alter, amend, or repeal the bylaws. See Article 7 of the ByLaws of the Federal National Mortgage Association, as amended.

[35] " 'A vested right * * * [is] one which is absolute, complete, and unconditional to the exercise of which no obstacle exists, and which is immediate and perfect in itself and not dependent upon a contingency.' " *Hutton* v. *Autoridad Sobre Hogares De La Capital,* 78 F. Supp. 988, 994 (Puerto Rico, 1948). Under 12 U.S.C. § 1723a(h), the Board of Directors do not have this absolute, complete, and unconditional right, the stockholders' right can be no greater. *See also* note 18, *supra.*

[36] It could be argued that the Secretary is more likely to approve a decision of the Board if its vote is 10 to 5 as opposed to 10 to 9. But the matter in question calls for an interpretation of the law, not a forecast of the Secretary's probable actions.

[37] "Laws which restrict a party to those gains reasonably to be expected from the contract are not subject to attack under the Contract Clause, notwithstanding that they technically alter an obligation of a contract." *El Paso* v. *Simmons, supra,* note 26, 379 U.S. at 515.

need be said on this issue except that Congress, as a matter of public policy, has the constitutional power to subject the FNMA to the Freedom of Information Act. It is worth noting that Amtrak, a privately owned corporation,[38] is already subject to the Act.[39]

For the foregoing reasons we are of the opinion that S. 1397 is constitutional.

JOHN M. HARMON
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[38] Like FNMA, Amtrak is a privately owned corporation that was created by an Act of Congress.

[39] *See* 45 U.S.C. § 546(g) (Supplement V, 1975).