COMMONWEALTH *vs.* ONE 1977 PONTIAC GRAND PRIX AUTOMOBILE
(and a companion case[1]).

Suffolk. May 1, 1978. — July 7, 1978.

Present: QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Narcotic Drugs. Practice, Civil*, Forfeiture proceeding. *Due Process of Law*, Forfeiture proceeding, Right to a hearing. *Motor Vehicle*, Forfeiture.

In two actions by a district attorney seeking forfeiture of two automobiles pursuant to the provisions of G. L. c. 94C, § 47, the holder of a security interest in both vehicles could not complain of lack of notice of the seizure and forfeiture where it had actual notice of the proceedings and fully participated in them. [671-672]

The holder of a security interest in two automobiles was not entitled to notice and a hearing prior to seizure of the automobiles under the provisions of G. L. c. 94C, § 32. [672-673]

The forfeiture provisions of G. L. c. 94C, § 47, were not unconstitutional in failing to protect an innocent holder of a security interest in two automobiles forfeited under the statute. [673-675]

---

[1] Commonwealth *vs.* One 1974 Buick Automobile.

CIVIL ACTIONS commenced in the Superior Court on May 17, 1977, and August 15, 1977, respectively.

The cases were heard by *George*, J., a District Court judge sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*Milton Schwartzberg (Ira Nagel* with him) for the defendants.

*Peter D. Feeherry*, Assistant District Attorney *(Joanna Connolly*, Legal Assistant to the District Attorney, with him) for the Commonwealth.

LIACOS, J. These two cases were initiated by a district attorney, pursuant to the provisions of G. L. c. 94C, § 47, seeking forfeiture of two automobiles, a 1977 Pontiac and a 1974 Buick. Both automobiles had been seized by the police following the arrest of their owners on charges of possession of a controlled substance with intent to distribute. See G. L. c. 94C, § 32.[2] The owners received notice of the forfeiture proceedings, but neither owner appeared at trial.

The cases came on for trial on September 8, 1977, before a judge of the Superior Court, Suffolk County, sitting without a jury. See G. L. c. 94C, § 47 *(d)*. The judge allowed a motion by the district attorney to consolidate the two cases, and allowed a motion by General Motors Acceptance Corporation (GMAC) to intervene. GMAC, which had a security interest in both vehicles, the nature of which is discussed more fully below (see note 5 *infra)*, assumed the burden of defense in both cases. In each case, the judge found that the automobile "was being used in the illegal transportation of a controlled substance" and ordered and adjudged that the automobile be confiscated by the Commonwealth. GMAC

---

[2] General Laws c. 94C, § 47 *(a)*, inserted by St. 1971, c. 1071, § 1, provides in part: "*(a)* The following property shall be subject to forfeiture to the commonwealth and all property rights therein shall be in the commonwealth: . . . (3) All conveyances, including aircraft, vehicles, or vessels which are used, or are intended for use, to transport, conceal or otherwise to facilitate the manufacture, dispensing or distribution of or possession with intent to manufacture, dispense or distribute, a controlled substance in violation of the provisions of section thirty-two."

took appeals to the Appeals Court, and we allowed an application for direct appellate review. G. L. c. 211A, § 10 (A). We affirm the judgments of the Superior Court.

The following facts appear in a stipulation filed in the Superior Court by the district attorney and GMAC. On or about July 22, 1977, GMAC brought an action for declaratory judgment and equitable relief in the Superior Court, naming as defendant the district attorney for Suffolk County. GMAC sought a declaration that certain provisions of G. L. c. 94C were unconstitutional, and sought to gain possession of the two automobiles. One of the instant forfeiture proceedings had been initiated by the district attorney prior to GMAC's suit (action against the Pontiac was begun on May 17, 1977), and the other forfeiture proceeding was initiated subsequent to GMAC's suit (action against the Buick was begun on August 15, 1977). The district attorney and GMAC agreed that motions would be made seeking dismissal of GMAC's suit and seeking allowance of GMAC's intervention in both forfeiture proceedings "on behalf of" the defendant automobiles. At the consolidated forfeiture hearing on September 8, 1977, the judge allowed the motion to dismiss the GMAC suit and, as already has been noted, allowed the motion to intervene.

1. In light of these facts, we find it difficult to comprehend the contention of GMAC on appeal that it "has been substantially deprived of its constitutional guarantee of procedural due process in that it received no notice of seizure and forfeiture, and hence had no opportunity to set forth any defense to the Commonwealth's action pursuant to G. L. c. 94c, § 47 (c) (3)."[3] We need not discuss whether

---

[3] General Laws c. 94C, § 47 (c), as amended by St. 1972, c. 806, § 30, provides in part: "(c) The court shall order forfeiture of all conveyances subject to the provisions of subparagraph (3) of subsection (a) of this section [see note 2, *supra*], except as follows: . . . (3) No conveyance shall be subject to forfeiture unless the owner thereof knew or should have known that such conveyance was used in and for the business of unlawfully manufacturing, dispensing or distributing controlled substances. Proof that the conveyance was used to facilitate the unlawful dispensing, manufacturing or distribution of, or possession with intent unlawfully to manufac-

GMAC, as the holder of security interests in the two automobiles, had a constitutional right to notice of the forfeiture proceedings. It is apparent from the facts that GMAC had actual notice of the proceedings, had opportunity to participate in them, and took full advantage of the opportunity.[4]

GMAC appears also to suggest that it should have received notice and an opportunity to be heard prior to the actual seizure, as distinguished from forfeiture, of the automobiles. GMAC cites two Supreme Court cases, *Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972), and *Sniadach v. Family Fin. Corp.*, 395 U.S. 337 (1969), as well as one of our own cases, *Haverhill Manor, Inc. v. Commissioner of Pub. Welfare*, 368 Mass. 15, 24, cert. denied, 423 U.S. 929 (1975), for the proposition that the Fourteenth Amendment to the United States Constitution requires the State to provide some kind of hearing before a significant property interest is taken. We need not discuss in detail the many considerations and qualifications that define the constitutional dimensions of these cases, all of which GMAC has seen fit to ignore. See, e.g., *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 676-680 (1974); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 603-620 (1974). It suffices to note that "seizure for purposes of forfeiture is one of those '"extraordinary situations" that justify postponing notice and opportunity for hearing.' *Fuentes v. Shevin*, 407 U.S., at 90; see *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 339

---

ture, dispense or distribute, controlled substances on three or more different dates shall be prima facie evidence that the conveyance was used in and for the business of unlawfully manufacturing, dispensing or distributing controlled substances."

[4] General Laws c. 94C, § 47 (d), inserted by St. 1971, c. 1071, § 1, provided that, following initiation of a forfeiture proceeding, "[t]he court shall order the commonwealth to give notice by certified or registered mail to the owner of said conveyance *and to such other person as appear to have an interest therein* and shall promptly, but not less than two weeks after notice, hold a hearing on the petition" (emphasis added). See St. 1977, c. 556, § 3, which amended G. L. c. 94C, § 47 (d). The certificates of title relating to the two automobiles identify GMAC as first lienholder. The record before us does not disclose whether GMAC received the statutory notice.

(1969); *Boddie* v. *Connecticut,* 401 U.S. 371, 378-379 (1971)." *Calero-Toledo, supra* at 677. See *Haverhill Manor, Inc., supra* at 24-25. All the considerations that were present in *Calero-Toledo* to support seizure without a prior hearing are present in the instant cases. Seizure serves the important governmental purpose of allowing the Commonwealth to "assert *in rem* jurisdiction over the property in order to conduct forfeiture proceedings, thereby fostering the public interest in preventing continued illicit use of the property and in enforcing criminal sanctions" (footnote omitted). *Id.* at 679. Lack of prior notice of the seizure protects against the removal, destruction, or concealment of the property. *Id.* Finally, seizure is initiated by government officials as a first step in the forfeiture proceeding detailed in c. 94C, § 47; seizure is not initiated by self-interested private parties, as was the case in *Fuentes* v. *Shevin, supra.*

Having concluded that notice and hearing are not required prior to a proper seizure for the purpose of forfeiture, we need not pursue a possible alternative ground for rejecting GMAC's procedural due process argument — that GMAC did not possess a significant property interest in the automobiles at the time of seizure or thereafter.[5]

2. GMAC does not contest the validity or propriety of the judge's findings that the automobiles were being used in the illegal transportation of a controlled substance or that the automobiles were subject to forfeiture pursuant to G. L. c. 94C, § 47 (*a*) (3). Cf. *Commonwealth* v. *One 1969 Mer-*

---

[5] The instalment sale contract entered into by the owner of the Pontiac and the seller provided, inter alia, that (1) the seller retained security interests in the automobile to secure the buyer's performance of obligations under the contract; (2) the buyer was not to use the automobile "illegally, improperly or for hire"; and (3) in the event the buyer failed to comply with any of the terms of the contract, or if the seller had reasonable cause to believe that the automobile was "in danger of misuse or confiscation," the seller could declare the unpaid instalments due and payable and take immediate possession of the automobile. The seller duly assigned to GMAC all rights and interests in the contract and the automobile. The instalment sale contract entered into by the owner of the Buick and the seller, and as submitted as an exhibit in the Superior Court, did not include the provisions numbered (2) and (3) above.

*cedes-Benz Automobile, ante* 663 (1978). GMAC does maintain, however, that forfeiture in these cases deprives it of contingent property rights without due compensation. GMAC also argues that § 47 (*c*) (3), the statutory "exception" to the forfeiture provision of § 47 (*a*) (3), see notes 2 and 3, *supra,* violates the Fourteenth Amendment in that it "(1) adversely affects innocent parties, (2) only provides for owners' rights, and (3) fails to meet the Fourteenth Amendment constitutional guarantee which demands that the law shall not be unreasonable, arbitrary or capricious in its application." The gist of these arguments, as we understand them, is that the statute does not go far enough in that it only protects from forfeiture "innocent" *owners* — those who can show that they did not know and should not have known that the conveyance was used in and for the business of unlawfully manufacturing, dispensing, or distributing controlled substances. See § 47 (*c*) (3), (*d*). GMAC argues that the statute is unconstitutional for the reason that it does not offer similar protection to innocent parties in GMAC's position — first lienholders or those who hold a "contingent property right" in the property subject to forfeiture.[6] GMAC adds that its "unique interest in this property stems from the important fact that such a considerable balance remains due and owing on these vehicles ($11,508.83 in all) [$8,792.52 for the Pontiac; $2,716.31 for the Buick]."

GMAC's arguments are based partly on social policy grounds (the loss absorbed by GMAC will ultimately be borne by society, presumably through higher interest rates, and will result in an impediment to commerce), and partly on substantive due process grounds. As for the social policy arguments, the short answer is that these are legislative, not judicial, concerns. See, e.g., *Massachusetts Hous. Fin. Agency* v. *New England Merchants Nat'l Bank,* 356 Mass. 202, 212 (1969).

As for the constitutional arguments, we cannot say that the Legislature has acted arbitrarily or irrationally in failing

---

[6] GMAC does not contend that its status as first lienholder qualifies it for the protection afforded an "owner" under § 47 (*c*) (3).

to make special provision for the protection of innocent parties in GMAC's position. It would serve no purpose to repeat the historical development of forfeiture proceedings recently outlined by the Supreme Court in *Calero-Toledo* v. *Pearson Yacht Leasing Co.*, 416 U.S. 663, 680-690 (1974). We highlight the underlying philosophy: "Forfeiture of conveyances that have been used — and may be used again — in violation of the narcotics laws fosters the purposes served by the underlying criminal statutes, both by preventing further illicit use of the conveyance and by imposing an economic penalty, thereby rendering illegal behavior unprofitable. . . . To the extent that such forfeiture provisions are applied to lessors, bailors, or secured creditors who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property." *Id.* at 686-688.[7] Our case law is in accord. See *Commonwealth* v. *Certain Motor Vehicle*, 261 Mass. 504, 508-510 (1928).

3. We conclude that GMAC has failed to demonstrate that its procedural or substantive due process rights were violated by the operation of G. L. c. 94C, § 47, in the instant cases.

*Judgments affirmed.*

---

[7] The Court did not purport to lay down a per se rule that forfeiture statutes are immune to constitutional infirmity. It intimated that an owner might have a valid constitutional claim if property subjected to forfeiture had been taken from him without his privity or consent. *Calero-Toledo, supra* at 689. The Court went on to note that "the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive" (footnote omitted). *Id.* at 689-690. It is true in the instant cases, as it was in *Calero-Toledo*, that "no allegation has been made or proof offered that the company did all that it reasonably could to avoid having its property put to an unlawful use." *Id.* at 690. We intimate no opinion as to whether the interests of a secured creditor in GMAC's position rise to a level that would bring the cautionary language of *Calero-Toledo* within reach.