COMMONWEALTH vs. ONE 1978 FORD VAN; FORD MOTOR
CREDIT COMPANY, intervener.

Norfolk. March 9, 1981. — May 4, 1981.

Present: GRANT, CUTTER, & GREANEY, JJ.

*Due Process of Law,* Forfeiture proceeding. *Motor Vehicle,* Forfeiture.

The holder of a security interest in a motor vehicle against which forfei-
    ture proceedings had been brought pursuant to G. L. c. 94C, § 47,
    was not an "owner" within the meaning of § 47 (c) (3) and was not en-
    titled to relief from forfeiture of its interest on the ground that it had
    no knowledge of the unlawful use of the automobile. [762-766]
Forfeiture of an automobile under G. L. c. 94C, § 47, for unlawful use
    unknown to and unsanctioned by the holder of a security interest in
    the automobile did not constitute an unconstitutional taking of the
    security interest. [766-769]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 22, 1979.

The case was heard by *Garrity,* J.

*Donald J. Kaiser, Jr.,* Assistant District Attorney, for the
Commonwealth.

*Michael E. Hager* for the intervener.

GREANEY, J.   This action was initiated by a district attor-
ney, pursuant to the provisions of G. L. c. 94C, § 47, seek-
ing the forfeiture of the defendant motor vehicle.   The vehi-
cle had been seized by the State police following the arrest
of its owner, James H. Bean, Jr., on a charge of possession of
a controlled substance with intent to distribute.   See G. L.
c. 94C, § 32.   Bean apparently received notice of the forfei-
ture proceeding but did not appear at the trial.   Ford Motor
Credit Company (Ford), which held a security interest in
the vehicle, the nature of which is discussed more fully
below (see note 3, *infra*), was permitted to intervene and to
assert a claim against the vehicle.   The case was tried before

a judge sitting without a jury[1] on a statement of agreed facts and exhibits with testimony from two witnesses.[2] The judge filed findings of fact and rulings of law as required by § 47(d).

The facts may be summarized as follows. Bean purchased the vehicle on or about July 21, 1978, from a Ford dealer and executed, in connection with its purchase and financing, a retail installment sale contract.[3] Ford purchased the dealer's interest in the contract on July 27, 1978. Prior to accepting assignment, Ford conducted an investigation of Bean's credit which revealed him to be employed but without any credit history. Ford's records did not disclose any derogatory information about Bean or give any indication that the vehicle might be used for an unlawful purpose. Bean was arrested in June, 1979, following an undercover investigation, for the sale, on January 31, 1979, to two State police officers of a quantity of pencyclidine (angel dust) which he apparently kept hidden behind a roof tile in the vehicle. The vehicle was seized by the police on or about July 5, 1979. Bean's payments to Ford (which had been current to that time) went into default shortly thereafter. The forfeiture action was commenced on June 22, 1979. Bean was convicted and sentenced on October 31, 1979, on an indictment charging him with possession of a class C controlled substance. There was no dispute that Bean's activity rendered the vehicle subject to forfeiture. It was stipulated

---

[1] The parties filed a waiver of trial by jury. See *Commonwealth v. One 1976 Cadillac DeVille Automobile,* 380 Mass. 411, 414 n.1 (1980).

[2] The testimony was provided by one of the arresting officers and by one of Ford's customer accounts supervisors.

[3] The installment sale contract provided, inter alia, that (1) the seller retained a security interest in the automobile to secure the buyer's performance of the obligations in the contract; (2) the buyer was not to use the automobile "illegally, improperly or for hire"; and (3) in the event the buyer failed to comply with any terms of the contract, or if the seller deemed the property "in danger of misuse or confiscation," the seller could declare the unpaid installments immediately due and payable and repossess the automobile in the manner permitted by law.

that, but for the forfeiture action and its effect, Ford had satisfied all conditions precedent to the vehicle's repossession.

Based on the foregoing facts, the judge implicitly ruled that Ford had the right to assert the interest of the owner in defense of the forfeiture action, and he found that Ford had done all that reasonably could be expected of it to insure that the vehicle would not be used in violation of the narcotic drug laws. He ordered the entry of a judgment under § 47(d) forfeiting the vehicle to the Commonwealth subject to Ford's security interest.

1. Section 47(a)(3) of G. L. c. 94C, inserted by St. 1971, c. 1071, § 1, makes subject to forfeiture: "All conveyances, including . . . vehicles . . . which are used, or intended for use, to transport, conceal, or otherwise to facilitate the manufacture, dispensing or distribution of, or possession with intent to manufacture, dispense, or distribute, a controlled substance in violation of the provisions of section thirty-two [of c. 94C]." The first sentence of subsection (c)(3), as so inserted, states: "No conveyance shall be subject to forfeiture unless the owner thereof knew or should have known that such conveyance was used in and for the business of unlawfully manufacturing, dispensing, or distributing controlled substances." The pertinent portions of § 47(d), as appearing in St. 1977, c. 556, § 3, provide that notice of a complaint seeking forfeiture be given "to the owner of said conveyance . . . and to such other person as appears to have an interest therein . . ."; that at the hearing "the commonwealth shall have the burden of proving all material facts [necessary to establish forfeiture] by a preponderance of the evidence"; and that "the owner or other person claiming thereunder shall have the burden as to all exceptions set forth in subsection (c)."[4] The first question

---

[4] Basic definitions appear at § 1 of c. 94C, inserted by St. 1971, c. 1071, § 1. The word "owner" is not defined. The word "person" is defined as an "individual, corporation, government, or governmental subdivision or agency, business trust, estate, trust, partnership or association, or any other legal entity."

presented is whether the word "owner" appearing in the first sentence of subsection (c)(3) includes a secured party in Ford's position. We conclude that it does not.

General Laws c. 94C — the Controlled Substances Act — was inserted by St. 1971, c. 1071, § 1, as a complete revision of then existing laws regulating illicit narcotic drugs. The statute was modeled in large part on the Uniform Controlled Substances Act which was adopted by the National Conference of Commissioners on Uniform State Laws in 1970. See 9 U.L.A. §§ 101 through 607 (Master ed. 1979). Section 505 of the Uniform Act provides for the forfeiture of "all conveyances . . . including vehicles" which are used in drug trafficking, and subsection (a)(4)(iv) thereof expressly makes "forfeiture of a conveyance encumbered by a bona fide security interest . . . subject to the interest of the secured party if he neither had knowledge of nor consented to the act or omission." Prior to the passage of c. 94C, 1971 House Doc. No. 2657 was introduced in the Legislature to amend the existing provisions of G. L. c. 94 with respect to the forfeiture of motor vehicles used in the unlawful sale or possession of narcotic drugs. That bill provided that any such forfeiture would be subject to "the bona fide security interest of a person without knowledge of such unlawful use . . . ." Because of the anticipated passage of legislation designed to revise the existing narcotic drug laws, that bill, and some seventy-five others pertaining to the regulation of controlled substances, were referred to the special commission established in 1967 (see Res. 1967, c. 164) to study the narotic drug laws. See Res. 1971, cc. 1 and 22. The commission issued its fourth interim report on August 23, 1971. A proposed version of c. 94C was included as part of that report and filed as 1971 House Doc. No. 6180. Section 37(a)(4)(E) of that bill contained, in substantial conformity with the counterpart subsection of the Uniform Act, a provision that a forfeiture of any conveyance used in violation of the statute which was "encumbered by a bona fide security interest [would be] subject to the interest of the secured party if he neither had

knowledge of or consented to the act or omission." That bill was given an unfavorable report by the House Committee on Social Welfare and was subsequently recommitted for additional study and revision. 1971 House Journal 339A. In October, 1971, a revised bill (bearing 1971 House Doc. No. 6380) was filed which provided in § 52 thereof for forfeitures. That version deleted the provisions contained in House 6180 which protected the rights of secured parties, and it formulated the exceptions to forfeiture in a form substantially similar to what is contained in the present law. Subsequent drafts of c. 94C which were substituted for House 6380 retained the basic exceptions to forfeiture contained in that bill and continued to omit any exception for secured parties. See 1971 House Doc. No. 6428, § 1(52)(c); 1971 House Doc. No. 6464, § 1(48)(c)(3). These last two bills were both reported favorably (see 1971 House Journals 352A and 354A), and House 6464 was enacted on November 11, 1971, as St. 1971, c. 1071, and inserted in the General Laws as c. 94C. This extensive legislative history (which was not provided to the judge below or included in the briefs on appeal), satisfies us that the General Court did not intend the word "owner" in subsection (c)(3) to encompass a party holding a security interest in a motor vehicle. See 2A Sands, Sutherland Statutory Construction § 48.03 (4th ed. 1973). Cf. *Chakrabarti* v. *Marco S. Marinello Associates, Inc.,* 377 Mass. 419, 421-423 (1979) (specific omission of G. L. c. 93A jurisdiction in final bill creating a Housing Court which had been contained in prior bills constitutes implied expression of legislative purpose that grant of jurisdiction was not intended despite general jurisdictional language which implied the contrary). We note as well that coordinate statutes which have a bearing on the rights of parties with security interests in motor vehicles do not equate those interests with ownership. For example, the Motor Vehicle Certificate of Title Law — G. L. c. 90D, as amended by St. 1972, c. 732, § 3 — defines an owner in § 1 thereof, as a "person, other than a lienholder, having title to a vehicle," while the motor vehicle installment sales

act — G. L. c. 255B — carefully differentiates in § 1 between a "retail buyer" or "buyer," a "retail seller" or "seller" and a "sales finance company." See G. L. c. 255B, § 1, fourteenth par. The cases that we have found from other jurisdictions which allow secured parties relief from forfeiture do so on the basis of an express exception for their interests similar to the one contained in the Uniform Act. See, e.g., *One 1957 Chevrolet* v. *Division of Narcotic Control,* 27 Ill. 2d 429, 433 (1963); *State* v. *Cessna Intl. Fin. Corp.,* 90 N.M. 40, 42 (1977); *General Motors Acceptance Corp.* v. *Atkins,* 204 Tenn. 700, 702-703 (1959).

Ford argues that the provision in § 47(d) calling for notice "to the owner of said conveyance . . . and to such other person as appears to have an interest therein" and the provision that "the owner . . . or other person claiming thereunder" shall have the burden of establishing an exception to forfeiture, cannot be harmonized with the word "owner" in subsection (c)(3) unless that word is construed to include a secured party. The Uniform Act makes no provision for notice requirements with respect to forfeiture proceedings but rather leaves that matter to determination by the States which adopt it. The Act places the burden of proving any exemption or exception upon the "person" claiming it. 9 U.L.A., *supra* § 506. If the quoted provisions in § 47(d) are considered sufficient to create an ambiguity in the statute, the usual method of resolving that ambiguity would be to resort to any available legislative history (see *Chouinard, petitioner,* 358 Mass. 780, 782 [1971]; *Rice* v. *Rice,* 372 Mass. 398, 400 [1977]), which establishes a specific legislative exclusion of security interests. It is conceivable that the language relied upon by Ford is aimed at protecting the rights of a person who has paid for a vehicle but for reasons of convenience has placed title in the name of a third party. The language may also authorize a secured party, in appropriate circumstances, to assert certain rights or defenses which would be personally available to an owner who has defaulted, such as failure of notice, failure of the government to prove that the vehicle had been

used to commit an offense which would render it subject to forfeiture, or one of the other exceptions to forfeiture set forth in subsection (c)(1), (2) and (3). Because of this we do not consider the language concerning notice and burdens of proof in § 47(d) nugatory unless it is given the meaning sought by Ford, nor do we believe, in view of the compelling nature of the legislative history, that the language was intended to override the exclusion of security interests.

2. Ford also argues, based on the judge's finding that it had done all that could be expected of it to prevent misuse of its property, that the application of forfeiture to its interest serves no legitimate purpose and is unduly oppressive. See *Calero-Toledo* v. *Pearson Yacht Leasing Co.*, 416 U.S. 663, 689-690 (1974); *Commonwealth* v. *One 1977 Pontiac Grand Prix Automobile*, 375 Mass. 669, 675 n.7 (1978). By this argument, Ford seeks, in essence, to carve out a judicial exception for its contingent property interest on the theory that forfeiture of that interest constitutes an impermissible taking by the government without just compensation.

There is no doubt that forfeiture promotes important contemporary policy objectives.[5] "Forfeiture of conveyances that have been used — and may be used again — in violation of the narcotics laws fosters the purposes served by the underlying criminal statutes, both by preventing further illicit use of the conveyance and by imposing an economic penalty, thereby rendering illegal behavior unprofitable . . . ." *Calero-Toledo*, 416 U.S. at 686-687. In addition, forfeitures provide a source of revenue for law enforcement authorities to further their efforts in combating the dissemination of illegal drugs, and forfeited vehicles are

---

[5] The long history of forfeiture proceedings was recounted in detail in the *Calero-Toledo* decision, and it would serve no useful purpose to repeat that history here. See 416 U.S. at 680-690. Suffice it to say that the roots of the remedy are grounded in the bedrock of the common law (see Holmes, The Common Law 24-30 [1881]), and it has long been recognized in this Commonwealth as a valuable law enforcement tool. See *E. J. Fitzwilliam Co.* v. *Commonwealth*, 258 Mass. 103 (1927); *Commonwealth* v. *Certain Motor Vehicle*, 261 Mass. 504, 509 (1928).

often used by the authorities in connection with undercover operations. Some or all of these purposes might be defeated by an exception which would bar from forfeiture the many vehicles on the road which are encumbered by security interests. To be sure, the effect of the law is harsh but its "harshness . . . is justified by the apparent necessity of combating injury to the public welfare." *Commonwealth* v. *Certain Motor Vehicle,* 261 Mass. 504, 509 (1928).

Apart from this, a determination whether the statute is constitutionally oppressive calls for consideration of such factors as Ford's knowledge when it acquired the contract that it might not qualify for protection from forfeiture, the extent to which forfeiture interferes with Ford's property interests as a whole, and the degree to which the company's legitimate investment expectations are diminished as a result of forfeiture. See *Goldblatt* v. *Hempstead,* 369 U.S. 590, 594 (1962); *Penn Cent. Transp. Co.* v. *New York,* 438 U.S. 104, 124, 136 (1978); *Flynn* v. *Cambridge,* 383 Mass. 152, 159-160 (1981). There is no question that Ford is charged with knowledge when it acquired its interest that secured parties were not excepted from the effect of a § 47 forfeiture. As a sizeable commercial financing house, Ford must have foreseen and taken into account the occasional loss of a security interest to forfeiture. Moreover, forfeiture does not extinguish the underlying debt which remains enforceable against the maker of the note and any indorsers. While the principal debtor's status after conviction may render collection on the note impractical, that factor alone would not require invalidation of the forfeiture as an unconstitutional taking. There is no contention that Ford's losses to forfeiture might become so quantitively serious that they will impede commerce or that those losses will prevent Ford from making a reasonable return on its investment in this category of loan taken as a whole. There is, then, an absence of any of the usual factors which can render government interference with property rights subject to substantive due process questions. Cf. *Flynn* v. *Cambridge, supra* at 158-160. We consider significant the following statement

from *Commonwealth* v. *Certain Motor Vehicle, supra* at 509, made in the context of a rejection of a conditional seller's claim to a vehicle which had been forfeited for criminal activity unknown to and unsanctioned by the lienholder:

> "In all the cases of forfeiture of the *res* for the fault of the one in immediate control and against an owner without wrongful intent which have been called to our attention or which we have found, there has been at some time an entrusting of the property by the owner to another. The owner, by his own act, has, at least for the moment, taken knowingly a claim against the one to whom control was given in place of the thing itself. He is left with that claim when, through illegal action of the one in control, the return of the thing is prevented. It may be that the claim is of little or no value, but it is a contractual right at one time recognized by him as an adequate equivalent for the thing, or for the risk of losing it. There is no gross injustice in leaving him to this remedy if public welfare will be served by the forfeiture of the thing. Accordingly, the law does not go beyond constitutional power in depriving an owner of property which he has himself previously entrusted to the control of another because of the fault of that other or of any successive person in control before the owner has regained actual possession, although that owner is ignorant of the use made of his property, is opposed to such use, in no way has consented to it, at the moment of the illegal use is entitled, as against the offender, to the return of the property and is seeking to regain actual possession."[6]

We conclude that the Legislature's determination that a secured party's rights should be subordinated to the govern-

---

[6] The decision in *Commonwealth* v. *Certain Motor Vehicle* was cited with approval and relied upon in the opinion in *Commonwealth* v. *One 1977 Pontiac Grand Prix Automobile,* 375 Mass. 669, 675 (1978).

ment's interest should not be judicially revised, and that § 47 as applied to someone in Ford's position is not constitutionally oppressive.[7]

The judgment is to be modified by striking therefrom the words "subject to security interest of Ford Motor Credit Company," and, as so modified, the judgment is affirmed.

*So ordered.*

---

[7] Apart from strictly constitutional considerations, we perceive certain policy arguments which favor the preservation of interests like Ford's from the effect of a forfeiture. However, the weighing of competing policy considerations is a matter for the Legislature, not the courts. *One 1977 Pontiac Grand Prix Automobile, supra.* Recognition of this principle is especially important in this context because, in the absence of a specific statutory exception for secured parties, a judicially created one could open the door for parties holding a variety of inchoate or contingent rights in motor vehicles subject to forfeiture to claim interests in the vehicles which would have priority over the government's right to enforce confiscation. This may be why the Congress in the counterpart Federal statute (21 U.S.C. § 881[a][4] [1976]) has made no provision for the interests of secured creditors or others with contingent interests but has instead left such claimants to the remedy of petitioning the Attorney General for remission or mitigation. *Id.* at (d). The Attorney General's determination is a discretionary one, remission being a matter of grace, not of right. See *United States* v. *One 1976 Lincoln Mark IV,* 462 F.Supp. 1383, 1388 n.1 (W.D. Pa. 1979). See also *United States* v. *One 1962 Ford Thunderbird,* 232 F.Supp. 1019 (N.D. Ill. 1964).